IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| YANIRA YESENIA OLDAKER, *et al.*, : <br> : <br> Petitioners, : <br> : <br> v. : <br> : <br> THOMAS GILES, *et al.*, : <br> : <br> Respondents. : <br> : | CASE NO.: 7:20-CV-00224 (WLS) |

**ORDER**

Before the Court is an "Amended Motion to Reconsider, or in the Alternative, Withdraw from the Consent Scheduling Order Currently in Place," filed by Respondents on December 10, 2020. (Doc. 48.)[1] For the reasons that follow, the motion is **DENIED**.

**I.    Background**

This action was brought on Monday, November 9, 2020 when Petitioner Yanira Yesenia Oldaker filed a Petition for Writ of Habeas Corpus and an Emergency Motion for Temporary Restraining Order ("TRO") requesting that the Court stay her deportation based on an asserted First Amendment violation. (Docs. 1 & 2.) The Court promptly set the emergency TRO motion for a hearing to occur the next day (Doc. 7). Pursuant to an email from Respondents' counsel, which was unobjected to by Oldaker's counsel, the Court reset that hearing for Friday, November 13, 2020. On November 12, 2020, the Parties filed and the Court granted a consent motion to continue the hearing and to allow additional time for the Parties to brief the Petition and TRO motion. (Docs. 13 & 16.) In the days that followed, substantially similar petitions and TRO motions were filed by Petitioners Keynin Jackeline Reyes Ramirez and Ana Adan Cajigal. (*See* Docs. 20 & 21.)[2] Hearings were also promptly set for those Petitioners, but pursuant to consent motions, the Court continued the hearings on their TRO motions until a later date and extended the deadlines for Respondents to respond

---
[1] Because it was amended, Respondents' previously-filed motion to reconsider (Doc. 47) is **DENIED AS MOOT**.
[2] Further, those Petitioners' cases were consolidated into this case on November 18, 2020.

1

to the TRO motions and petitions to November 24, 2020 as to Oldaker and Cajigal and November 25, 2020 as to Ramirez. (Docs. 16, 27, 28.) On November 23, 2020, Ndonga Mbeti also filed a Petition for Writ of Habeas Corpus in this case. (Doc. 38.)

On November 24, 2020, all Parties jointly filed a "Consent Motion to Revise Scheduling Order." (Doc. 39.) Therein, "the Parties agree[d] to the following terms and conditions:"

1. The Parties stipulate that the Respondents are served in satisfaction of the Federal Rules of Civil Procedures.
2. On or before December 1, 2020, undersigned counsel for the Petitioners will notify undersigned counsel for the Respondents of all the individuals detained at the Irwin County Detention Center who they know of, who wish to file Petitions for Writs of Habeas Corpus and related Motions for Temporary Restraining Orders based on substantially similar factual allegations as those raised by Petitioners.
3. Respondents will not remove Petitioners or any individuals named pursuant to the aforementioned paragraph from the United States until the Court holds a hearing on Petitioners' Motions for Temporary Restraining Orders and issues an Order on Petitioners' Motions for Temporary Restraining Orders. Specifically, the Petitioners and any individuals named pursuant to the aforementioned paragraph shall remain in the United States until the hearing on the Petitioners' Motions for Temporary Restraining Orders is held or later.
4. Pending approval from the Court, Petitioners shall file on or before December 21, 2020, a Consolidated Petition for Writ of Habeas Corpus and related Consolidated Motion for Temporary Restraining Order for all individuals at the Irwin County Detention Center whose cases are based on substantially similar factual allegations as the Petitioners.
5. Pending approval from the Court, Respondents shall file their Response brief on or before January 7, 2020.

6. Pending approval from the Court, Petitioners shall file their Reply brief on or before January 21, 2020.

7. The Parties jointly seek leave of the Court to continue the hearing on the Petitioners' pending Motions for Temporary Restraining Orders, and any other pending motions, until after the week of January 21, 2020, at a date and time to be set by the Court.

8. Throughout the time this Consent Motion to Revise Scheduling Order is in effect, the Parties will continue to cooperate and confer in good faith in an effort to reach a settlement in this case.

(Doc. 39 at 5-6) (hereinafter the "Consent Scheduling Motion"). The same day, the Court signed the Consent Scheduling Motion as-is. (Doc. 46) (hereinafter the "Consent Scheduling Order"). However, prior to the docketing of the Consent Scheduling Order the following morning, Respondents' counsel emailed the Court to ask the Court not to grant the Consent Scheduling Motion because the highest levels of ICE had not agreed to it. (*See* Doc. 38-1.) Petitioners' counsel filed an emergency motion to grant the Consent Scheduling Motion, and, finding good cause to do so, the Court issued the Consent Scheduling Order. (Docs. 44, 45, 46.)

Pending now is Respondents' "Amended Motion to Reconsider, or in the Alternative, Withdraw from the Consent Scheduling Order Currently in Place," filed on December 10, 2020. (Doc. 48.) Respondents now state that "[d]ue to a miscommunication between undersigned Assistant United States Attorneys and ICE," the Consent Scheduling Motion contains provisions contrary to ICE's actual position and that ICE only intended to stay the removal of Oldaker, Ramirez, and Cajigal and not other petitioners, and that ICE intended to have a hearing the week of December 28, 2020. *Id.* at 2-3. Respondents have attached a proposed Revised Scheduling Order, in which Respondents make the primary substantive modification to assert that they will not remove Oldaker, Ramirez, and Cajigal until a hearing is held or later, and that stays of removal of other persons will be made on a case-by-case basis. (Doc. 48-2 at 6-7.) No changes are proposed to the briefing deadlines and hearing date. The proposed order also lists the names of twelve other persons (including Ndonga), who wish to file habeas corpus petitions and TRO motions. *Id.* Petitioners were ordered to respond, and

3

they have responded arguing that neither reconsideration nor withdrawal are justified. (Doc. 50.)

## II.     Analysis

Respondents have not cited any rule, statute, or case to support their argument for reconsideration or withdrawal of the Consent Scheduling Order— perhaps because their argument presents a high hurdle.

"As a general rule, a party does not have standing to appeal an order or judgment to which he consented." *FTC v. Lalonde*, 545 F. App'x 825, 832 (11th Cir. 2013) (citing *Hofmann v. De Marchena Kaluche & Asociados*, 657 F.3d 1184, 1187 (11th Cir. 2011)). However, a party may "seek modification of a consent order under Rule 60(b)" if he can show "'that the circumstances are sufficiently extraordinary to warrant relief.'" *Id.* (quoting *Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1294 (11th Cir. 2013)) (quotation omitted). Rule 60(b) provides for relief from a judgment or order for "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged . . .; or (6) any other reason that justifies relief." Fed.R.Civ.P. 60(b). Respondents have failed to demonstrate or allege any of the factors warranting relief from judgment, and the one justification they assert does not justify relief for the reasons explained herein. This is not a case where the Respondents' counsel in fact lacked authority to bind Respondents by the Consent Scheduling Motion.[3] Indeed, we have a "system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (citation omitted). In sum, no extraordinary circumstances have been alleged to warrant vacatur of the Consent Scheduling Order.

It is well-established that "[a] court's reconsideration of a prior order is an extraordinary remedy, which the power to exercise must be used sparingly and cautiously." *Jackson v. Astrue*, No. 3:08-cv-461-J-33TEM, 2008 U.S. Dist. LEXIS 69884, at *4-5 (M.D. Fla. Sep. 15, 2008).

---

[3] And even if it were, "an argument seeking to renege under these circumstances, where, *inter alia,* the AUSA and the [agency's] representatives implicitly represented that they had authority . . . and [plaintiff] relied on the agreement, offends public policy." *Barmat, Inc. v. United States*, 159 F.R.D. 578, 582 (N.D. Ga. 1994).

4

As such, motions for reconsideration are only appropriate where "'(1) there has been an intervening change in the law, (2) new evidence has been discovered that was not previously available to the parties at the time the original order was entered, or (3) reconsideration is necessary to correct a clear error of law or prevent manifest injustice.'" *Pennamon v. United Bank*, No. 5:09-CV-169 (CAR), 2009 U.S. Dist. LEXIS 64825 at *1, 2009 WL 2355816 (M.D. Ga. July 28, 2009) (citation omitted). "In order to demonstrate clear error, the party moving for reconsideration must do more than simply restate his prior arguments, and any arguments which the party inadvertently failed to raise earlier are deemed waived." *McCoy v. Macon Water Auth.*, 966 F. Supp. 1209, 1223 (M.D. Ga. 1997). Respondents have made no assertion as to any of these prongs. Respondents' counsel essentially asserts that ICE was not in agreement with the Consent Scheduling Motion when it was filed, not that new evidence was discovered after it was filed. Moreover, Respondents have failed to show how enforcing the Consent Scheduling Order would be manifestly unjust. Respondents are now aware of the other persons who intend to seek relief in this case (*see* Docs. 48-2, 54, 56), so it is unclear why ICE cannot adhere to its agreement to not deport them until the TRO motions are resolved. In fact, ICE has since informed the Court that not only is it staying the deportation of the first four petitioners, but it has also released them from custody. (Doc. 51.)

Furthermore, as Petitioners argue, consent orders are generally treated as contracts and subject to the contract interpretation laws of the state in which they were signed and entered. *United States v. Bradley*, 484 Fed. Appx. 368, 374 (11th Cir. Ga. July 13, 2012) ("We interpret a consent order--a kind of contract--the same way we interpret other kinds of contracts.") (applying Georgia contract law because the order was entered and signed in Georgia); *Frulla v. CRA Holdings Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008) ("We interpret a consent decree as we would a contract, applying principles of [the state's] general contract law."). "The general rule [in Georgia] is that there can be no reformation of a written contract except where there is a mutual mistake, or a mistake on the part of one contracting party and fraud on the part of the other." *Hill v. Agnew*, 34 S.E.2d 702, 704 (1945). Respondents have made no such showing here. Under Georgia law, "'an attorney is cloaked with apparent authority to enter into a binding agreement on behalf of a client.' The client is therefore 'bound by his attorney's agreement . . . if the opposing party was unaware of any limitation on the attorney's apparent

5

authority.'" *Ford v. Citizens & S. Nat'l Bank*, 928 F.2d 1118, 1120 (11th Cir. 1991) (citations omitted). Thus, even construing the Consent Scheduling Order as a contract, the Court has no basis not to enforce it.[4]

## CONCLUSION

Accordingly, because Respondents have not shown a sufficient justification to amend or withdraw the Consent Scheduling Order, Respondents' motion to reconsider or withdraw (Doc. 48) is **DENIED**. The Parties shall comply with the Consent Scheduling Order (Doc. 46) unless otherwise ordered by the Court.

**SO ORDERED**, this 22nd day of December 2020.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[4] Additionally, as the Court previously noted, the Consent Scheduling Order has extended the deadline for Respondents to file a consolidated response to the TRO motions, which is otherwise past due, rendering the TRO motions unopposed. Respondents have presented no argument on this issue and propose no changes to the deadlines and hearing date in their proposed revised scheduling order. Respondents have not explained why it requests the Court to make some changes based on ICE's position but not others.