IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

YANIRA YESENIA OLDAKER et. al.,   :
       :
      Plaintiffs,      :
       :
      v.      :     CASE NO: 7:20-CV-224 (WLS)
       :
THOMAS P. GILES, *et al.*     :
       :
      Defendants.    :
_____  :

## ORDER

Before the Court are five Motions to Dismiss filed by (1) Defendant LaSalle Southeast, LLC (Doc. 232), (2) Defendant Irwin County Detention Center (Doc. 227), (3) Defendant Warden David Paulk (Doc. 233) (4) Defendants Cheryl Slacks, Coretta Battle, Taura Amber Hughes, Latoshia Coney, and Janet Vaughn in their individual capacities (Doc. 349), and (5) Defendant Marteka George in her individual capacity (Doc. 252). For the reasons discussed below, the ICDC Defendants'[1] Motions are **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. As a result, all federal claims against Defendant LaSalle Southeast, LLC; Defendant Warden David Paulk; all individual Irwin County Detention Center Defendants in their official capacities; and Defendants Cheryl Slacks, Coretta Battle, Taura Amber Hughes, Latoshia Coney, Janet Vaughn, and Marteka George in their individual capacities are **DISMISSED-WITH-PREJUDICE.** Plaintiffs' state law claims against those Defendants are **DISMISSED-WITHOUT-PREJUDICE** because the Court declines to exercise supplemental jurisdiction over those claims.

---

[1] *See infra* Section I.A.3. defining "ICDC Defendants" as used in this Order.

I.    PROCEDURAL & FACTUAL BACKGROUND

    A.    Procedural Background

    1.    History

The above-captioned action, which was filed on November 9, 2020, began as a hybrid habeas/civil action brought by a number of immigrant women who were detained at Irwin County Detention Center ("ICDC"), while subject to removal proceedings or awaiting removal. (Doc. 1). The original petition for relief was filed by Yanira Yesenia Oldaker ("Plaintiff Oldaker"), asserting that Respondents had violated her First and Fifth Amendment rights as well as other statutory and regulatory rights enjoyed by witnesses in ongoing investigations. (*Id.*) Oldaker sought release pending adjudication, a declaration by the Court that Respondents had violated her rights, and an injunction halting her removal. (*Id.*) Because Oldaker was scheduled for deportation the same morning, she filed her petition simultaneously with an Emergency Motion for a Temporary Restraining Order ("TRO") which sought an injunction preventing her removal. (Doc. 2).

On December 21, 2020, Plaintiffs filed a "Consolidated Amended Petition for Writ of Habeus Corpus and Class Action Complaint for Declaratory and Injunctive Relief and for Damages" ("Consolidated Petition"). (Doc. 54). The Consolidated Petition named thirteen Petitioner-Plaintiffs and added a number of Respondent-Defendants. (*Id.* ¶¶ 19–45). The Consolidated Petition brought, in total, twenty-one claims for relief. (*Id.* ¶¶ 524–777). The claims included a habeas claim, seeking Plaintiffs' release from unlawful detention, and civil claims seeking monetary, declaratory, and injunctive relief from all Defendants. (*See Id.*) Plaintiffs simultaneously filed a second Emergency Motion for TRO (Doc. 56), asking the Court for an injunction seeking, *inter alia*, release of Plaintiffs during the pendency of the action. (*Id.*) However, when the Court ruled on the second Emergency Motion for TRO on September 17, 2021, all Petitioner-Plaintiffs had subsequently been released, with the exception of one Petitioner-Plaintiff who was deported. (Doc. 167). As a result, the Court denied the Emergency Motion for TRO as moot. (*Id.*)

Plaintiffs, with leave of the Court, filed a "Consolidated Second Amended Class Action Complaint for Declaratory and Injunctive Relief and for Damages" ("SAC") (Doc. 210), on December 1, 2022. The SAC alleges twenty-three counts against all Defendants. Only twelve

of those, however, are relevant to the ICDC Defendants' Motions to Dismiss. Plaintiffs bring all claims against the ICDC Defendants on behalf of putative classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). (Doc. 210 ¶¶ 637–51).

    **2.      Claims against ICDC Defendants in the Second Amended Complaint**

Plaintiffs allege five federal claims against Irwin County Detention Center Defendants ("ICDC Defendants").[2] At Counts 2 and 5 of the SAC, Plaintiffs allege First and Fourteenth Amendment claims under Section 1983 against the ICDC Defendants. (Doc. 210 ¶¶ 663–83, 710–29). At Counts 3 and 6 of the SAC, Plaintiffs allege First and Fifth Amendment claims against the ICDC Defendants in their official capacities for declaratory relief, and individual capacities for damages under *Bivens*. (*Id.* ¶¶ 684–96, 730–47). At Count 9 of the SAC, Plaintiffs allege a claim for Conspiracy to Deter Testimony/Participation in Court Proceedings. (*Id.* ¶¶ 774–96).

Plaintiffs allege seven state-law claims against the ICDC Defendants. At Count 11 of the SAC, Plaintiffs allege a Breach of Contract claim against Defendants ICDC and LaSalle Southeast, LLC ("Defendant LaSalle") (Doc. 210 ¶¶ 806–14). At Count 12 of the SAC, Plaintiffs allege a Negligent Hiring or Retention Claim against Defendants ICDC and LaSalle (*Id.* ¶¶ 815–28). At Count 13 of the SAC, Plaintiffs allege a Gross Negligence Claim against all ICDC Defendants (*Id.* ¶¶ 829–38). At Count 15 of the SAC, Plaintiffs allege a Medical Malpractice Claim against Defendants ICDC and LaSalle. (*Id.* ¶¶ 850–62). At Count 16 of the SAC, Plaintiffs allege an Intentional Infliction of Emotional Distress claim against all ICDC Defendants. (*Id.* ¶¶ 863–73). At Count 17 of the SAC, Plaintiffs allege a Negligent Infliction of Emotional Distress claim against all ICDC Defendants. (*Id.* ¶¶ 874–884). And at Count 23 of the SAC, Plaintiffs allege a claim for Attorneys' Fees and Costs against all ICDC Defendants (*Id.* ¶¶ 945–48).

---

[2] The term ICDC Defendants refers to a class of Defendants who are affiliated with Irwin County Detention Center named as such by Plaintiffs, many of whom are moving to dismiss the claims against them. (Doc. 210 ¶¶ 33–48). However, because of subsequent procedural developments, which the Court will discuss below, not all of the Defendants Plaintiffs name as ICDC Defendants remain in the lawsuit, and others do not join the instant Motions to Dismiss because they are unknown or unidentified.

### 3.    ICDC Defendants Remaining

Plaintiffs name two institutional ICDC Defendants: ICDC itself, and Defendant LaSalle (together, the "ICDC Entity Defendants"). (Doc. 210 ¶¶ 33–34). Plaintiffs also identify the following ICDC employees as Defendants in their individual and official capacities: David Paulk, Marteka George, Walkiria Mines, Djibril "William" Rabiou, Amber Hughes, "FNU Smith,"[3] Latoshia Coney, "FNU Hanes," Nadine Faison, Corretta Battle, Janet Vaughn, Shannon Scott, Cheryl Slacks, and "Unknown ICDC Officers ##1-X." (Doc. 210 ¶¶ 35–48).[4] However, since the SAC was filed, some of these Defendants have been dismissed from the action.

Walkiria Mines ("Defendant Mines") and Djibril "William" Rabiou ("Defendant Rabiou") in their individual and official capacities were incorrectly named in the SAC as ICDC employees when, in fact, they were employed by Immigration and Customs Enforcement ("ICE") as deportation officers. (Doc. 244 at 3) ("Plaintiffs have since learned that Walkiria Mines and Djibril 'William' Rabiou were [ICE] employees detailed to ICDC from July 2020 through August 2020"). (Doc. 308 at 2). The claims asserted against them as ICDC officers, therefore, were not viable. For this reason, Defendant Mines and Defendant Rabiou, in their individual capacities, filed a Consent Motion to Dismiss the claims asserted against them at Counts 2, 3, 5, 6, and 11–17. (Doc. 308 at 1).[5] Plaintiffs, Defendant Mines, and Defendant Rabiou, also agreed to construe Count 9 to apply to them, not as ICDC employees, but as federal employees. (*Id.* at 5). The Court granted Defendants Mines and Rabiou's Motion, and, therefore, dismissed Counts 2, 3, 5, 6, and 11–17 against them. (Doc. 312 at 1–2). Accordingly, they have not joined the instant motions to dismiss. (*See* Docs. 252, 349, & 323). As a result,

---

[3] FNU stands for "First Name Unknown."

[4] FNU Hanes, FNU Smith, and Unknown ICDC Officers ##1-X are unnamed or unknown Defendants. (Doc. 210 ¶¶ 40, 42, 48). Because their identities are either partially or fully unknown, Plaintiffs have been unable to serve these Defendants. (Doc. 225). However, these Defendants were allowed to remain in the lawsuit provided that they be either served before the close of the discovery period or removed from the action by amendment to the SAC.

[5] The Court notes that Count 14 for Medical Battery was not alleged against Defendants Mines and Rabiou either as ICDC Defendants or as Federal Defendants, but they moved for dismissal of that claim against them, nonetheless. (*See* Doc. 210 ¶¶ 839–40).

the Court considers them Federal Defendants[6] and will address their Motion to Dismiss (Doc. 323) the claims against them as Federal Defendants in a separate order.

Plaintiffs filed a Notice of Voluntary Dismissal (Doc. 336) of all claims as to Defendants Nadine Faison ("Defendant Faison") and Shannon Scott ("Defendant Scott"). The Court confirmed Plaintiffs' notice and dismissed Defendants Faison and Scott in their individual and official capacities from the action. (Doc. 337).

Accordingly, the following ICDC Defendants in their individual and official capacities remain in the action: David Paulk, Marteka George, Amber Hughes, FNU Smith, Latoshia Coney, FNU Hanes, Coretta Battle, Janet Vaughn, Cheryl Slacks, and Unknown ICDC Officers ##1-X. These individuals, along with ICDC and LaSalle, comprise the "ICDC Defendants" for purposes of this Order.

### B.    Factual Background

The 196-page SAC names sixteen women who claim that, while in civil immigration detention at ICDC, they were subjected to medical and other abuse, most notably, unnecessary gynecological procedures that were performed without their consent by or at the direction of Defendant Doctor Mahendra Amin ("Defendant Dr. Amin"). (*See generally* Doc. 210).[7] The procedures caused Plaintiffs significant pain and left some Plaintiffs infertile. (*Id.*) The Court will not recite the allegations of each Plaintiff against the Defendants, because such a summary would be unnecessary for the purposes of the instant Motions. Instead, to provide context, the Court will first describe the types of claims asserted by Plaintiffs, with a particular focus on Plaintiff Oldaker's allegations to provide a typical narrative. Then, the Court will describe the three classes of Defendants, and, generally, what Plaintiffs allege their involvement was in the medical abuses perpetrated by Defendant Dr. Amin and subsequent retaliation for speaking out about those abuses.

---

[6] The Federal Defendants, as the Court will briefly discuss below, are various federal entities and employees of those entities.

[7] The facts contained herein, consistent with the standard of review for motions to dismiss, are derived from Plaintiffs' Complaint, accepted as true, and construed in the light most favorable to Plaintiffs. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

1. **Plaintiffs**

a. **Yanira Yesenia Oldaker**

Plaintiff Oldaker is a woman who was held in ICDC from January 1, 2020, until December 30, 2020. (Doc. 210 ¶ 139). When she arrived at ICDC, she experienced symptoms related to a 2014 hysterectomy, which had previously been treated with an estrogen patch. (Doc. 210 ¶ 142). As a result, she requested another patch from ICDC medical staff, who referred her to Defendant Dr. Amin, (Doc. 210 ¶¶ 142–43), a physician affiliated with Defendant Hospital Authority of Irwin County ("Defendant Irwin County Hospital"). (Doc. 210 ¶¶ 49–50).

When Plaintiff Oldaker saw Defendant Dr. Amin in February 2020, she requested an estrogen patch, instead, he had her undress for a transvaginal ultrasound. (Doc. 210 ¶¶ 144–45). Plaintiff Oldaker explained that she had undergone a hysterectomy, but Defendant Dr. Amin responded that he did ultrasounds on all of his patients. (*Id.* ¶ 145). During the procedure, Defendant Dr. Amin "violently jammed a transvaginal ultrasound monitor inside her and, after removing it, pushed several fingers into her vagina causing her excruciating pain." (*Id.*) Plaintiff Oldaker "squirmed and told him 'no,' but he kept going." (*Id.*) After this examination, he prescribed her Estrace pills. (*Id.*) A female ICDC officer was present for the procedure. (*Id.* ¶ 146). After the ultrasound, Plaintiff Oldaker experienced significant pain, vaginal bleeding, and vaginal discharge for several days afterward. (*Id.* ¶ 147). After reviewing Plaintiff Oldaker's medical records, an outside medical expert opined "'[t]here was no medical indication to perform a transvaginal ultrasound' because, following [Plaintiff Oldaker's] hysterectomy, 'there are no reproductive organs to evaluate.'" (*Id.* ¶ 171).

Plaintiff Oldaker next saw Defendant Dr. Amin on September 8, 2020. (Doc. 210 ¶ 148). During the visit she explained that she only wanted to refill a prescription, but a nurse told her that she had to have a pap smear. (*Id.* ¶ 149). Plaintiff Oldaker was unsure why she needed a pap smear, since she had, as noted, previously undergone a hysterectomy, "but the nurse gave her no choice." (*Id.*) When Defendant Dr. Amin performed the pap smear, he inserted the speculum without lubrication, which caused "agonizing pain" when it was removed. (*Id.* ¶ 150). Plaintiff Oldaker experienced lingering pain for several days after the procedure, she had trouble sitting, and could not wipe herself for several days. (*Id.* ¶ 151).

On October 26, 2020, Plaintiff Oldaker submitted testimony to the Department of Justice ("DOJ") about her experiences with Defendant Dr. Amin. (Doc. 210 ¶ 152). On the evening of November 7, 2020, Plaintiff Oldaker became aware that her commissary account had been emptied, which commonly occurs within 24 to 48 hours of deportation. (*Id.* ¶ 155). Plaintiff Oldaker obtained counsel who was informed that she was scheduled to be deported on November 9, 2020. (*Id.* ¶ 157). Plaintiffs allege that Defendants expedited Plaintiff Oldaker's deportation date in response to her submitting testimony to DOJ. (*Id.* ¶ 158). Plaintiff Oldaker was transported to an airport in Columbus, Georgia, to be deported as scheduled, but following the filing of the instant lawsuit, she was informed that her deportation had been halted. (*Id.* ¶¶ 159–60).

After her deportation was halted, Plaintiff Oldaker was returned to ICDC the same day. (Doc. 210 ¶ 161). When she returned, ICDC staff allegedly retaliated against Plaintiff Oldaker. (*Id.* ¶ 162) For example, staff at ICDC failed to administer her Post Traumatic Stress Disorder medication, and refused to return her personal effects for more than a day after she returned. (*Id.* ¶¶ 163–64). Plaintiff Oldaker called her counsel on the evening of November 10, 2020, to complain about ICDC staff withholding her medication and personal effects. (*Id.* ¶ 165) Almost immediately after the phone call, ICDC staff administered her medications and returned her belongings—suggesting that ICDC staff were eavesdropping on privileged and confidential communications between Plaintiff Oldaker and counsel. (*Id.*)

### b.    Other Plaintiffs

Plaintiffs' allegations of improper treatment at ICDC can be divided into three main sub-categories: (i) those who allege that procedures were performed on them without informed consent, (ii) those who allege that unnecessary procedures were performed on them, and (iii) those who allege that they were retaliated against for protected speech.[8]

---

[8] Although the subcategories the Court discusses here resemble Plaintiffs' proposed classes, the use of those subcategories does not express an opinion about the propriety of Plaintiffs' classes for purposes of an action brought pursuant to Rule 23.

### i.    Lack of Informed Consent

Plaintiffs Oldaker, Tatyana Solodkova, Luz Adriana Walker, Lourdes Silas, Jaromy Navarro, Ndonga Mbeti, Keynin Ramirez, Ana Adan-Cajigal,[9] Pauline Binam,[10] and Jane Doe Nos. 5, 6, 8 15, 22, and 25 allege that Defendant Dr. Amin performed gynecological procedures on them "without prior disclosure of their nature, purpose, risks, or alternatives" while they were in the custody of ICDC and ICE. (Doc. 210 ¶ 641). Specifically, when Plaintiffs saw Defendant Dr. Amin, there was frequently no translator present, even when those Plaintiffs spoke little to no English. (*Id.* ¶¶ 265, 268, 270, 302, 309, 497). Defendant Dr. Amin frequently performed painful and intrusive procedures (e.g., pap smears, transvaginal pelvic ultrasounds) on Plaintiffs with little to no warning before he began the procedure, or explanation as to the purpose of the procedure; and with apparent disregard to the discomfort the procedures caused the Plaintiffs. (*Id.* ¶¶ 145, 184–87, 209–211, 228–29, 244, 265, 268, 270, 282, 302, 322, 335, 340, 355, 375, 392, 425). Defendant Dr. Amin also performed surgeries on Plaintiffs without informing them of the nature of the surgery, its risks, or any alternative options. (*Id.* ¶¶ 248, 285, 307–311, 356, 436).

For example, Plaintiff Binam, was told she would be receiving a "simple" Dilation and Curettage surgery to drain ovarian cysts. (Doc. 210 ¶¶ 434–35). However, when she awoke from general anesthesia, she discovered that Defendant Dr. Amin had performed a partial salpingectomy, or partial removal of her right fallopian tube. (*Id.* ¶¶ 440–41). As a result, Defendant Dr. Amin informed her that she would no longer be able to conceive without fertility assistance. (*Id.* ¶ 445).

### ii.    Unnecessary Procedures

Plaintiffs Oldaker, Solodkova, Walker, Silas, Navarro, Ndonga, Ramirez, Adan-Cajigal, Binam, and Jane Doe Nos. 5, 6, 8, 15, 22, and 25 allege that many procedures performed by Defendant Dr. Amin on them were medically unnecessary. (Doc. 210 ¶¶ 176, 225, 257, 301, 356, 642). For example, Plaintiff Ndonga was treated by Defendant Dr. Amin on a number of

---

[9] The Court notes that Plaintiff "Ana Gabriela Adan Cajigal" is the named Plaintiff in the SAC's caption, and therefore, is the name the Court uses in this Order. However, Ms. Cajigal's name is sometimes spelled in the SAC as "Cagijal."

[10] Hereinafter, Plaintiffs are referred to individually as "Plaintiff [surname or family name]."

occasions, and he performed a dilation and curettage, a paropscopy, and an ovarian cystectomy on her. (*Id.* ¶¶ 355, 356). When an expert examined Plaintiff Ndonga's medical record, that expert opined that Plaintiff Ndonga "'underwent inappropriate, overly aggressive evaluation and care by [Defendant Dr.] Amin'; 'the operation that [Defendant Dr.] Amin performed on [Plaintiff] Ndonga did not meaningfully contribute to the evaluation or management of her gynecological condition[;]' and '[n]one of the care provided by [Defendant Dr.] Amin actually addressed [Plaintiff] Ndonga's underlying gynecological complaints'" (*Id.* ¶ 367).

Similarly, Plaintiff Jane Doe No. 5 was told by Defendant Dr. Amin that he would perform a surgical procedure to treat an ovarian cyst. (Doc. 210 ¶ 248) However, when another physician examined her after the procedure, she told Plaintiff Jane Doe No. 5 that Defendant Dr. Amin had "'cut or burned part of her uterus.'" (*Id.* ¶ 253) A specialist who reviewed Jane Doe No. 5's medical records found that she may never be able to conceive. (*Id.* ¶ 256). Plaintiffs allege that this procedure was not medically necessary. (*Id.* ¶ 257).

### iii.    Retaliation Plaintiffs

Plaintiffs Oldaker, Solodkova, Walker, Silas, Navarro, Ndonga, Ramirez, Adan-Cajigal, Binam, and Jane Doe Nos. 5, 6, 8, 15, and 22 allege that "after speaking out about, protesting, making known they were willing to speak out about" Defendant Dr. Amin's improper medical treatment, they were subjected to retaliation by ICDC and the Federal Defendants. (Doc. 210 ¶¶ 162, 170, 201, 259, 260, 325, 347, 363, 387). For instance, on October 27, 2020, Plaintiff Ndonga completed an interview with federal investigators related to Defendant Dr. Amin's treatment of her and other female detainees at ICDC. (*Id.* ¶ 359–60). A few hours after the interview, ICE informed Plaintiff Ndonga that the stay on her deportation would be lifted, and that she would be deported immediately. (*Id.* ¶ 360–61). Plaintiff Ndonga alleges that the expedited deportation was retaliation for her participation in the investigation. (*Id.* ¶ 363).

In the same vein, Plaintiff Ramirez spoke with congressional representatives who visited ICDC in response to a whistleblower complaint and media reports about Defendant Dr. Amin's improper medical treatment. (Doc. 210 ¶ 380). Then, on November 5, 2020, her name was provided to federal investigators identifying her as a victim of Defendant Dr. Amin. (*Id.* ¶ 385). Plaintiffs allege that, as a result of Plaintiff Ramirez speaking out, ICE attempted

to expedite her deportation twice in the next two weeks, although she was never actually deported. (*Id.* ¶¶ 381–87).

### 2. Defendants

Plaintiffs group Defendants into three main categories. (Doc. 210 ¶¶ 21–50). First, the Irwin County Medical Defendants, which includes Defendant Irwin County Hospital and Defendant Dr. Amin. (*Id.* ¶¶ 49–50). Second, the ICDC Defendants. (*Id.* ¶¶ 33–48). And third, the Federal Defendants, which includes officials who are affiliated with ICE, the Department of Homeland Security, and the Department of Justice. (*Id.* ¶¶ 21–32).

#### a. Irwin County Hospital

When detainees required gynecological care outside of ICDC, they were frequently referred to Defendant Irwin County Hospital, (*see generally* Doc. 210 ¶¶ 139–600), which is a general medical and surgical facility near ICDC. (*Id.* ¶ 49). Defendant Dr. Amin is a physician, affiliated with Defendant Irwin County Hospital, who provided medical services to detainees who were referred from ICDC. (*Id.* ¶ 50). As noted, much of Plaintiffs' allegations flow from alleged improper provision of medical treatment directly by Defendant Dr. Amin. (*See generally* Doc. 210 ¶¶ 139–600). Plaintiffs also allege that Defendant Irwin County Hospital allowed Defendant Dr. Amin to have a standing order in place requiring an ultrasound on patients without regard to such patient's individual needs. Plaintiffs assert such practice resulted in Defendant Irwin County Hospital employees, and particularly Defendant Dr. Amin, performing ultrasounds which Irwin County Hospital and Defendant Dr. Amin "[knew] or should [have] know[n] [were] not medically necessary." (*Id.* ¶ 75).

#### b. Irwin County Detention Center Defendants

In 2007, Irwin County, Georgia, entered into an Intergovernmental Agreement ("IGA") with the United States Marshal Service ("USMS") allowing the USMS and Federal Bureau of Prisons of the Department of Justice; and United States Immigration and Customs Enforcement of the Department of Homeland Security to house federal detainees at ICDC. (Doc. 210 ¶¶ 601–02). ICDC is a detention center located in Ocilla, Georgia. (Doc. 210 ¶ 33). Under the IGA, Irwin County would administer the daily operation of ICDC in exchange for a per-detainee daily payment. (*Id.* ¶ 602). Irwin County, in turn, contracted with Defendant LaSalle, which is a private for-profit company to operate ICDC. (*Id.* ¶ 611).

10

Plaintiffs allege that ICDC and its employees were aware of Defendant Dr. Amin's improper treatment, yet, despite this knowledge, continued to send patients to him. (Doc. 210 ¶¶ 70–76). According to Plaintiffs, ICDC's knowledge of Defendant Dr. Amin's improper treatment flowed from three sources. First, multiple women who were detained at ICDC complained, verbally and in writing, to ICDC officers about Defendant Dr. Amin's care. (*Id.* ¶ 71). Second, ICDC officers often accompanied Plaintiffs to their appointments with Defendant Dr. Amin and witnessed both that he did not obtain informed consent for the procedures, and that the women experienced severe pain. (*Id.* ¶ 73). Third, the ICDC Defendants were aware that Defendant DOJ had investigated Defendant Dr. Amin for similar unnecessary procedures from 2013–2015. (*Id.* ¶ 74).

Plaintiffs also allege that ICDC retaliated against Plaintiffs for complaining about Defendant Dr. Amin's improper medical treatment. (*See e.g.,* Doc. 210 ¶ 125). These retaliatory actions included, *inter alia*, placing Plaintiffs in solitary confinement, transferring them to other units, physically assaulting them, threatening to withhold food and water, delaying delivery of prescribed medications, limiting, or denying them phone access, and monitoring their phone calls and ending those calls abruptly when they discussed matters related to Defendant Dr. Amin's improper treatment or retaliation. (*Id.* ¶ 126).

### c.    Federal Defendants

The IGA required Irwin County to administer the ICDC facility in accordance with ICE standards and allow ICE to inspect the facility to assess compliance with these standards. (Doc. 210 ¶¶ 603–05). While Irwin County was responsible for providing medical care to ICE detainees within ICDC, all outside non-emergency referrals required ICE approval, which included those made to Defendant Dr. Amin. (Doc. 210 ¶¶ 606–09).

Plaintiffs allege that the Federal Defendants were aware of their complaints about Defendant Dr. Amin's medical care, and the 2013–2015 investigation into him. (Doc. 210 ¶¶ 70–94). Despite this, the Federal Defendants continued to allow ICDC to send patients to Defendant Dr. Amin. (*Id.* ¶¶ 72–73). Additionally, Dawn Wooten, a nurse at ICDC submitted a whistleblower complaint about Defendant Dr. Amin to Defendant Giles, the director of the ICE Atlanta field office at the time, on September 14, 2020. (*Id.* ¶ 82) Even after this complaint became public, some of the Plaintiffs were still sent to be treated by Defendant Dr. Amin. (*Id.*

¶ 83). Plaintiffs also allege that ICE employees engaged in retaliation against them alongside ICDC employees for their complaints about Defendant Dr. Amin, and that the Federal Defendants generally conspired to expedite removal orders to prevent Plaintiffs from participating in lawsuits and investigations. (Doc. 210 ¶¶ 111–38).

## II.    DEFENDANT LASALLE SOUTHEAST'S MOTION TO DISMISS

On January 12, 2023, Defendant LaSalle filed its Motion to Dismiss (Doc. 232) Plaintiffs' claims asserted against it in the SAC. Plaintiffs filed their Consolidated Response brief on February 22, 2023. (Doc. 259).[11] And on March 22, 2023, Defendant LaSalle filed a Reply (Doc. 273). All of the Parties' respective briefs have been submitted and Defendant LaSalle's Motion to Dismiss is ripe for ruling.

Specifically, Defendant LaSalle moves to dismiss Plaintiffs' class action allegations, the Section 1983 claims (Counts 2 and 5), federal constitutional claims (Counts 3 and 6), Section 1985 claim (Count 9), and all state law claims, (Counts 11–13, 15–17 and 23). For the reasons discussed in this Section II below, Defendant LaSalle's Motion to Dismiss is **GRANTED-IN-PART, DENIED-IN-PART,** and **DENIED-AS-MOOT-IN-PART.**

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable

---

[11] Plaintiffs were granted leave to file a consolidated brief in response to Defendants' Motions to Dismiss. (Doc. 258).

expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm and the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the [p]laintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 556 U.S. 449 (2012). The Supreme Court instructs that while on a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555), for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint.

### B.    Class Action Allegations

Defendant LaSalle moves to dismiss the class action allegations against it because "Plaintiffs cannot establish that common issues of law or fact predominate over individual questions, and the defined classes are improper 'fail-safe' classes." (Doc. 232-1 at 4). Under Rule 23, a Defendant may move for a determination of class certification at any time, even as early as the pleading stage. *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 694 (M.D. Ga. 2012) (citing *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995)). However, dismissal of class action allegations before discovery is an "extreme remedy," and is warranted only when a defendant can show, "from the face of the complaint, that it will be impossible to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove[.]" *Lawson*, 286 F.R.D. at 694; *accord Foxx v. Ocwen Loan Servicing, LLC,* No. 8:11-cv-1766-T-17EAK, 2012 WL 2048252, at *9–10 (M.D. Fla. June 6, 2012). This is the case because "the class determination generally involves considerations that are 'enmeshed in the

factual and legal issues comprising the plaintiff's cause of action.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)).

Here, the Court does not find that the class action allegations in the SAC are facially deficient, and, as a result, Defendant LaSalle's Motion to Dismiss those allegations is premature. As the Court noted before in response to Defendants making similar arguments in opposition to class certification at an even earlier stage of the litigation, "the Court finds that the adequacy of the class definitions will be determined upon the filing of the appropriate motion and responses by the Parties and upon a full review of those issues on the merits." (Doc. 209 at 4). To the extent the Court was unclear, if any, this note was not an invitation for Defendants to renew their objections to Plaintiffs' classes, once again, before discovery. Then, as now, the Court declines to address the adequacy of Plaintiffs' class definitions before discovery has begun, because such discovery may yield facts which are critical to that issue, preventing a full review of the class certification issues on the merits at this stage. Accordingly, Defendant LaSalle's Motion to Dismiss Plaintiffs' class action allegations against it is **DENIED-WITHOUT-PREJUDICE**.

### C.    Section 1983 Claims

Defendant LaSalle moves to dismiss Plaintiffs' claims against it under 42 U.S.C. § 1983, Counts 2 and 5,[12] because those claims fail as a matter of law. (Doc. 232-1 at 10–13). Plaintiffs attempt to chart two novel routes to recovery under Section 1983. First, that Defendant LaSalle, a private corrections company, is a state actor by virtue of its contract with Irwin County, Georgia, notwithstanding the fact that the detainees held at ICDC are held in civil immigration detention pursuant to federal law, on behalf of the federal government. (Doc. 210 ¶¶ 664, 711). Second, that Irwin County's delegation of its duties under the IGA to Defendant LaSalle rendered it the functional equivalent of that municipality, and, therefore, subject to municipal liability under Section 1983. (*Id.* ¶¶ 676, 724) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)).

---

[12] As noted, Count 2 alleges a Section 1983 claim for a violation of Plaintiffs' First Amendment rights, (Doc. 210 ¶¶ 663–83), and Count 5 alleges a Section 1983 claim for a violation of Plaintiffs' Fifth Amendment Due Process rights. (*Id.* ¶¶ 710–29).

Section 1983 creates a cause of action which allows an individual whose federal constitutional or statutory rights have been violated to seek damages from the state actor who caused the violation. 42 U.S.C. § 1983. A Section 1983 claim, therefore, requires a showing that the conduct complained of (1) was committed by a person acting under color of state law, and (2) that conduct deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156–57 (1978)). "The purpose of [Section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–257 (1978)). As a result, and critically, Section 1983 does not apply when a federal actor is acting under color of federal law. *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978);[13] *see Carman v. Parsons*, 789 F.2d 1532, 1534 (11th Cir. 1986).

Plaintiffs' main support for their contention that Defendant LaSalle is a state actor is a line of cases which have found that private actors, performing certain state functions, may be acting on behalf of the state. (Doc. 259 at 47–48) (citing *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (finding that a private prison health service that contracted with a county sheriff's office to house detainees pursuant to state law was the functional equivalent of a municipality in the context of a *Monell* claim)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (holding that a private company may be a state actor when it engages in a conspiracy with the state); *West v. Atkins*, 487 U.S. 42, 55 (1988) (finding that when a state had delegated its own affirmative duty to care for state prisoners to a private medical provider, that medical provider was acting under color of state law); *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (holding that a private prison company that held state prisoners could be sued under Section 1983, in a Fifth Circuit case decided after the partition of the Eleventh and Fifth Circuits); *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 101 (6th Cir. 1991) (holding that a private prison company operating a detention center for state prisoners could be sued under Section 1983).

---

[13] Decisions of the former Fifth Circuit rendered before its partition on October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The Court agrees with Plaintiffs to the extent that private companies who are holding prisoners on behalf of a state may be liable under Section 1983. However, these cases do not answer the salient inquiry here: whether a private company is acting under color of state law when they are holding federal detainees on behalf of the federal government, solely because a state entity serves as a contractual intermediary between the private company and the federal government. Neither the Eleventh Circuit nor the Supreme Court have weighed in on this issue; and it is, therefore, one of first impression.

### 1.    State Actor Inquiry

Plaintiffs' analysis of the state actor doctrine fundamentally fails to engage with the tests by which a court determines whether a private entity may be acting under color of state law. (*See* Doc. 259 at 33–40). An analysis under the relevant tests, however, reveals that Plaintiffs have not sufficiently pleaded that Defendant LaSalle was acting under color of state law.

To be acting under color of state law for purposes of Section 1983, a Defendant must have "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013) (quoting *West*, 487 U.S. at 49). A private party, such as Defendant LaSalle, acts with such authority as a state actor only in three "rare" circumstances:

> (1) the State has coerced, or at least significantly encouraged, the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test").

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347–48 (11th Cir. 2001) (citing *Nat'l Broad. Co. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026–27 (11th Cir. 1988)) (internal quotations removed). An analysis of Plaintiffs' allegations against Defendant LaSalle under any relevant test reveals that Plaintiffs have failed to sufficiently allege facts showing Defendant LaSalle was a state actor for purposes of Section 1983.

### a.    State Compulsion Test

The State compulsion test requires a showing that a state has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the private actor's

choice must be deemed to be that of the state." *Langston By & Through Langston v. ACT*, 890 F.2d 380, 385 (11th Cir. 1989). Here, the SAC does not allege that Irwin County exercised any coercive power over Defendant LaSalle, or encouraged LaSalle to take any action beyond entering into a voluntary contract with it, let alone such action that it would be fair to characterize Defendant LaSalle's treatment of Plaintiffs as a choice that "must be deemed that of the state." (*See* Doc. 210 ¶¶ 601–14). Instead, the SAC merely alleges that "Defendant ICE contracts with Irwin County, which in turn contracts with Defendant LaSalle, for the operation of the detention facility." (*Id.* ¶ 611). From this, Plaintiffs surmise that "Defendant ICDC, LaSalle, and their employees, agents, contractors, and/or officers are state or local actors and subject to suit under [Section 1983.]" (Doc. 210 ¶ 611). The Court, as noted, is not required to accept such legal conclusions as true, *Iqbal*, 556 U.S. at 679, and the fact that a contract exists between Irwin County and Defendant LaSalle is simply insufficient to support an allegation of fact that Defendant LaSalle was acting under a state compulsion.[14] Accordingly, the Court finds that Plaintiffs have not sufficiently pleaded that Defendant LaSalle was a state actor under the State compulsion test.

**b.    Public Function Test**

The public function test requires a showing that private actors are given powers, or perform functions, that are "traditionally the exclusive prerogative of the state." *Harvey*, 949 F.2d at 1131. Here, Irwin County had no prerogative in its own right, as a county in the state of Georgia, to detain Plaintiffs. Instead, Defendant LaSalle held Plaintiffs in civil detention pursuant to federal immigration law, authority which had been passed to Irwin County by the federal government, who, in turn, passed that authority along to Defendant LaSalle. At no point in this exchange, however, did the fundamental character of the authority change from one that existed by virtue of federal law, to one that was the prerogative of Irwin County or the State of Georgia. The SAC, therefore, does not sufficiently allege that Defendant LaSalle

---

[14] Plaintiffs also suggest that because Irwin County delegated to Defendant LaSalle its responsibility under the IGA to care for federal detainees in accordance with state and local laws, standards, and procedures, this is sufficient evidence of state involvement to support Section 1983 liability. (Doc. 259 at 48) (citing Doc. 210 ¶ 603). The Court, however, is unpersuaded by this suggestion because it is well established that mere regulation of a private actor's conduct is insufficient, by itself, to satisfy the State compulsion test. *See e.g., Rayburn*, 241 F.3d at 1348 (holding that "[t]he mere fact that a State regulates a private party is not sufficient to make that party a State actor").

was exercising powers or functions that are the exclusive prerogative of the State with respect to their alleged violations of Plaintiffs' constitutional rights. Accordingly, the Court finds that Plaintiffs have not sufficiently pleaded that Defendant LaSalle was a state actor under the Public function test.

### c.    Nexus/Joint Action Test

The nexus/joint action test requires a showing that the State has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Harvey*, 949 F.2d at 1131 (citing *Nat'l Broad. Co.*, 860 F.2d at 1026). The mere existence of a contract between a State entity and a private actor does not mean that every action taken by that private actor can be attributed to the state. *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278–79 (11th Cir. 2003). Instead, a plaintiff must allege that the governmental body and the private party were "intertwined in a symbiotic relationship," and that symbiotic relationship must involve "the specific conduct of which the plaintiff complains." *Id.* (quoting *Rayburn*, 241 F.3d at 1348).

Here, it is not clear from the allegations in the SAC that Irwin County had any participation in the administration of ICDC, let alone the insinuation required for the nexus/joint action test, because Irwin County had passed all of its obligations to administer the facility along to Defendant LaSalle.  (*See* Doc. 210 ¶¶ 601–14). While Plaintiffs allege substantial ICE involvement in the administration of ICDC, the SAC alleges no analogous Irwin County involvement. (*See Id.* ¶¶ 601–36). Therefore, upon the allegations, Defendant LaSalle can hardly be said to be "intertwined in a symbiotic relationship" with Irwin County. *See Pinellas*, 344 F.3d at 1278–79. Plaintiffs, in effect, argue that the Court should infer such a relationship from the mere existence of a contract with Irwin County. (*See* Doc. 259 at 48). However, that by itself, is simply insufficient to allege that the ICDC Entity Defendants were "a joint participant in the enterprise," with Irwin County, as to the violations alleged. *See Harvey*, 949 F.2d at 1131. As a result, Plaintiffs have not sufficiently pleaded that Defendant LaSalle was a state actor under the nexus/joint action test.

### d.    Conclusion: State Actor

Because Plaintiffs have not sufficiently pleaded that ICDC was a state actor under either the State compulsion test, the public function test, or the nexus/joint action test, they

cannot establish that Defendant LaSalle was acting under color of state law, which is fatal to their Section 1983 claim.

## 2.    Municipal Liability

Plaintiffs, alternatively, claim that Defendant LaSalle may be liable under a theory of municipal liability, sometimes dubbed "*Monell* liability." (Doc. 210 ¶ 676). Under *Monell*, a municipality may be held liable if a municipal policy causes a federal constitutional violation. *Monell*, 436 U.S. at 690. Plaintiffs appear to argue that *Monell* authorizes Section 1983 liability against a defendant independently of whether that defendant is a state actor. Even to the extent that Defendant LaSalle could be characterized as a "municipality"—something the Court doubts but need not decide—the statutory text and Eleventh Circuit authority plainly require that a defendant be acting under color of state law to establish Section 1983 liability. *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance regulation, custom, or usage . . . subjects a person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law"); *Harvey*, 949 F.2d at 1130 ("Even if Mrs. Harvey could attribute [municipal liability to a private party defendant] she is unable to state a claim for Section 1983 relief. A section 1983 action requires a showing that the conduct complained of was committed by a person [or entity] acting under color of state law" (enumeration removed)). As the Court has already discussed at length, Plaintiffs have failed to sufficiently plead that Defendant LaSalle was acting under color of state law, and therefore, cannot be subject to any liability, municipal or otherwise, under Section 1983.

## 3.    Conclusion: Section 1983

In sum, because Plaintiffs have failed to sufficiently plead that Defendant LaSalle was acting under color of state law when it allegedly violated Plaintiffs' constitutional rights, Plaintiffs have failed to state a claim under Section 1983, under any theory asserted. Accordingly, Defendant LaSalle's Motion to Dismiss Plaintiffs' Section 1983 Claims, at Counts 2 and 5 of the SAC, is **GRANTED** and those claims are **DISMISSED-WITH-PREJUDICE** with respect to Defendant LaSalle.

### D.    First and Fifth Amendment Claims

Defendant LaSalle moves to dismiss Plaintiffs' claims against it under the First and Fifth Amendment[15] (Counts 3 and 6), because those claims against it are moot. (Doc. 232-1 at 13—14). Plaintiffs bring two Federal Constitutional Claims against Defendant LaSalle, one for a violation of the First Amendment, and the other for a violation of the Fifth Amendment, both seeking declaratory relief, but not damages. (Doc. 210 ¶¶ 684–96, 730–47).[16]

"A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Troiano v. Supervisor of Elections in Palm Beach Cnty.,* 382 F.3d 1276, 1282 (11th Cir. 2004) (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335–36 (11th Cir. 2001) (per curiam)). A federal court determination of a moot controversy would be an impermissible advisory opinion. *Christian Coal. of Ala. v. Cole*, 355 F.3d 1288, 1291 (11th Cir. 2004). This requirement is imposed by the Article III limitation of federal court jurisdiction to "Cases" and "Controversies[.]" *Troiano*, 382 F.3d at 1282 (quoting *Al Najjar*, 273 F.3d at 1335–36). Standing must continue throughout the pendency of the lawsuit. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997).

Here, as Defendant LaSalle points out, according to the SAC, the federal government terminated its contract to hold detainees at ICDC in October 2021 (Doc. 210 ¶ 33), and there is no allegation in the SAC that Defendant LaSalle continues to be responsible for the detention of Plaintiffs. The constitutional claims against Defendant LaSalle allege constitutional violations which occurred while Plaintiffs were in their custody, as a result of a contract with the federal government. Since then, however, Plaintiffs no longer remain in

---

[15] Defendant LaSalle characterizes these claims as *Bivens* claims. However, *Bivens* is a damages remedy for violations of federal constitutional rights against a federal actor in their individual capacity. A claim for injunctive relief brought against an entity, therefore, is not brought under *Bivens*.

[16] Plaintiffs refuse to address Defendant LaSalle's argument that their *Bivens* claims are moot directly, because "Plaintiffs did not bring a *Bivens* claim for damages against LaSalle." (Doc. 259 at 31 n.14). Instead, they submit "to the extent LaSalle seeks to argue that Plaintiffs' claim for declaratory and injunctive relief against LaSalle are moot, the Court should deny such argument for the reasons laid out in the foregoing section." *Id.* The foregoing section, however, addresses only the arguments for mootness raised by the Federal Defendants, whose status differs from Defendant LaSalle in a number of legally significant ways. To the extent possible however, the Court will attempt to recharacterize Plaintiffs' arguments as a proper response to Defendants' arguments, without making arguments on Plaintiffs' behalf.

Defendant LaSalle's custody and, for this reason, a declaration that Defendant LaSalle's conduct toward them violated the Constitution would not provide meaningful relief.

However, Plaintiffs contend that their constitutional claims against Defendant LaSalle, fall under the "capable of repetition, yet evading review" doctrine, (Doc. 259 at 30–31), which prevents a defendant from evading judicial review for its conduct by voluntarily ceasing such conduct while a lawsuit is pending. *See Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998) (citing *L.A. Cnty. v. Davis*, 440 U.S. 625, 631 (1979)). But to fall under the "capable of repetition, yet evading review" doctrine, there must be "a reasonable expectation that the wrong will be repeated[.]" *Christian Coal. of Ala.*, 355 F.3d at 1291 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Because Plaintiffs are no longer detained at ICDC, and there is no allegation in the SAC that raises a realistic possibility that they might enter Defendant LaSalle's custody again, the Court finds that there is no reasonable expectation that the challenged conduct will repeat. As a result, Plaintiffs' constitutional claims against Defendant LaSalle are moot. Defendant LaSalle's Motion to Dismiss Plaintiffs' Constitutional claims against it are, therefore, **GRANTED** and those claims (Counts 3 and 6) are **DISMISSED-AS-MOOT**.

### E.  Section 1985(2) Claim

Defendant LaSalle moves to dismiss Plaintiffs' claim against it under 42 U.S.C. § 1985(2) (Count 9). (Doc. 232-1 at 14). Section 1985(2) "makes it unlawful for 'two or more persons' to conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein." *Chance v. Cook*, 50 F.4th 48, 51 (11th Cir. 2022) (quoting 42 U.S.C. § 1985(2)). Section 1985(2) authorizes claims for both deterring witnesses from testifying, *Chance*, 50 F.4th at 51, and for retaliating against witnesses who do, *Foster v. Pall Aeropower Corp.*, 111 F. Supp. 2d 1320, 1322 (M.D. Fla. 2000). Plaintiffs allege both types of claims against Defendant LaSalle. (Doc. 210 ¶¶ 774–96).

However, as the text of the statute requires, and prior authority confirms, Section 1985(2) "refer[s] to conspiracies that are designed to obstruct the course of justice in any court of the United States," and, therefore, plaintiffs seeking to recover under that clause must show a nexus between the alleged conspiracy and a proceeding in federal court. *Bradt v. Smith*, 634

F.2d 796, 801 (5th Cir. Jan. 9, 1981).[17] As Defendant LaSalle points out, this requirement poses a significant barrier to Plaintiffs' recovery under Section 1985(2), because Plaintiffs do not allege that Defendant LaSalle took any action against Plaintiffs in relation to a proceeding in a federal court. Rather, they merely allege that the actions Defendant LaSalle took hindered participation in immigration proceedings, federal investigations, and Plaintiffs' future participation in the current lawsuit, which was filed after the events alleged. (*See* Doc. 210 ¶¶ 774–96).

Nevertheless, Plaintiffs attempt to sustain their claim by asking the Court to accept that the potential or possibility of a federal lawsuit is sufficient to establish the required nexus to a proceeding in federal court. (Doc. 259 at 65–66). The best support they can find for this approach is a case from the Northen District of Georgia, which cites a Tenth Circuit case, which entertained the idea, in dicta, that a conspiracy to deter a plaintiff from bringing a lawsuit in federal court might give rise to a Section 1985(2) claim. *See Aque v. Home Depot U.S.A., Inc.*, 629 F.Supp.2d 1336, 1347–48 (N.D. Ga. Feb. 2, 2009) (citing *Shoultz v. Monfort of Colo., Inc.*, 754 F.2d 318, 322 (10th Cir. 1985)). This is a far cry from the type of authority that would compel this Court to adopt Plaintiffs' expansive view of Section 1985(2), particularly when a case that is binding on this Court requires a nexus between an alleged conspiracy and a federal court proceeding. *See Bradt*, 634 F.2d at 801. The Court, therefore, finds that the potential or possibility of a future federal lawsuit, as alleged, is an insufficient nexus to a proceeding in federal court to sustain Section 1985(2) liability. For this reason, Plaintiffs have failed to state a claim against Defendant LaSalle for a violation of Section 1985(2). Accordingly, Defendant LaSalle's Motion to Dismiss Plaintiffs' Section 1985(2) claim against them, at Count 9 of the SAC, is **GRANTED** and that claim is **DISMISSED-WITH-PREJUDICE**.

F.    **State Law Claims**

Defendant LaSalle moves to dismiss Plaintiffs' state law claims filed against it in Counts 11–13, 15–17 & 23. (Doc. 232-1 at 17–23). Although Defendant LaSalle argues that Plaintiffs fail to state a claim for each of their state law claims, the Court need not reach that issue,

---

[17] As noted before, decisions of the former Fifth Circuit rendered before its partition on October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner*, 661 F.2d at 1209.

because it declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant LaSalle.

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As a result, the Court has original jurisdiction over Plaintiffs' federal claims. District courts may exercise supplemental jurisdiction over state-law claims, that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). The Court, therefore, may exercise supplemental jurisdiction over Plaintiffs' state-law claims.

A district court, however, may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). When deciding whether to exercise supplemental jurisdiction over a state-law claim, the Court should consider "judicial economy, fairness, and comity[.]" *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) (citing *Baggett v. First Nat'l Bank of Gainesville*, 177 F.3d 1343, 1353 (11th Cir. 1997)). Both comity and judicial economy are served when state courts are given the opportunity to resolve issues of state law. *Rowe*, 279 F.3d at 1288. And this argument to decline jurisdiction is particularly strong when federal law claims have been dismissed prior to trial. *Id.*

Here, the Court has granted Defendant LaSalle's Motion to Dismiss all federal claims against it. Considering judicial economy, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant LaSalle. As such, the Court makes no determination as to the merits of those state law claims. Accordingly, Plaintiffs' state-law claims, at Counts 11–13, 15–17, & 23 of the SAC against Defendant LaSalle are **DISMISSED-WITHOUT-PREJUDICE**. Defendant LaSalle's Motion to Dismiss Plaintiffs' state-law claims is, therefore, **DENIED**, on the grounds asserted, as moot.

## G.    Conclusion

For the reasons discussed above, in Section II, Defendant LaSalle's Motion to Dismiss (Doc. 232) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. Plaintiffs' federal claims against Defendant LaSalle at Counts 2, 3, 5, 6, and 9 of the SAC, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise

supplemental jurisdiction over Plaintiffs' state law claims against Defendant LaSalle, at Counts 11–13, 15–17 and 23 of the SAC, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against Defendant LaSalle. As a result, LaSalle Southeast, LLC is hereby **DISMISSED** as a party from the action.

## III.    DEFENDANT IRWIN COUNTY DETENTION CENTER'S MOTION TO DISMISS

On January 17, 2023, Defendant ICDC filed a Motion to Dismiss (Doc. 227). Defendant ICDC filed a Reply (Doc. 273) to Plaintiffs' Consolidated Response (Doc. 259) on March 22, 2023. All the Parties' respective briefs have been submitted and Defendant ICDC's Motion to Dismiss is ripe for ruling. In its Motion, Defendant ICDC moves the Court to dismiss all of Plaintiffs' claims against it and all claims against the ICDC officers in their official capacities, at Counts 2, 3, 5, 6, 9, 11–13, 15–17 and 23.

### A.    Standard of Review: Rule 12(b)(6)

For the sake of brevity, the Court incorporates by reference the standard of review set forth above. *See* discussion *supra* Section II.A.

### B.    Capacity to Sue or Be Sued

Defendant ICDC moves to dismiss the claims against it contending that as a matter of law, it is not an entity which has the capacity to sue or be sued. (Doc. 227-1 ¶ 3). Plaintiffs name ICDC as a "detention facility" which "contracted with the federal government to detain individuals pursuant to federal immigration laws" (Doc. 210 ¶ 33). As a result, it is unclear from the face of the SAC the type of legal entity, if any, ICDC is. Defendant contends that, because ICDC is a detention center, it is immune to suit. In Plaintiffs' Response, however, Plaintiffs claim that ICDC may, in fact, be a private entity which is subject to suit. (Doc. 227 at 96).[18]

Under Federal Rule of Civil Procedure 17(b), the capacity to sue or be sued is determined by (1) for an individual, the law of that individual's domicile; (2) for a corporation,

---

[18] Both Plaintiffs and Defendant ICDC invite the Court to consider extrinsic evidence about the status of ICDC as a legal entity under Georgia law. Consistent with the standard of review for Motions to Dismiss, however, the Court is limited to "the four corners of the complaint," and therefore, declines to consider the extrinsic evidence either ICDC or Plaintiffs offer in support of their Motion and Response. *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 (11th Cir. 2006).

the law under which it was organized, and (3) for all other parties, the law of the state in which the district court is located. To determine whether Defendant ICDC has the capacity to sue or be sued, therefore, Georgia law controls the relevant inquiry. *See* Fed. R. Civ. Proc. 17(b)– (c).[19] Georgia law recognizes three classes of legal entity which are capable of being sued: (1) natural persons; (2) corporations, and (3) "such quasi-artificial persons as the law recognizes as being capable to sue." *Georgia Insurers Insolvency Pool v. Elbert Cnty.*, 368 S.E.2d 500, 502 (Ga. 1988) (quoting *Cravey v. Southeastern Underwriters Ass'n*, 105 S.E.2d 479 (1958)).

Here, the Court finds that the SAC sufficiently identifies ICDC as an entity to survive a motion to dismiss. The SAC names ICDC as a Defendant, and although the type of entity ICDC may be is unclear at this time, it is clear that Plaintiffs sue an entity named ICDC which allegedly contracted with Irwin County to house immigration detainees. (*See* Doc. 210 ¶ 33). Construing the pleading in the light most favorable to Plaintiffs, the Court finds that ICDC might well be a corporation or quasi-organization that is subject to suit under Georgia law.[20] *See Hill,* 321 F.3d at 1335. The Court, therefore, declines Defendant ICDC's invitation to find, as a matter of law, that it may not be sued when the SAC, construed in the light most favorable to Plaintiffs, sufficiently identifies ICDC as a private entity which might have the capacity to be sued.[21]

Defendant ICDC cites a footnote in an unpublished Eleventh Circuit case, and several federal district court cases that have found that ICDC or other detention centers are not entities that are capable of being sued under Georgia law. (Doc. 227-1 at 4). The Court, however, is unpersuaded by the reasoning in these cases, as it must be with such authority, because they provide only weak support for the proposition that detention centers,

---

[19] As the Court will discuss, Defendant ICDC and Plaintiffs disagree about whether ICDC is more properly characterized as a building or a Georgia corporation. In either case, however, Georgia law controls the inquiry. *See* Fed. R. Civ. P. 17(b)-(c).

[20] The Court notes that, throughout their Consolidated Response, Plaintiffs ask the Court to deny Defendants' motions to dismiss because further discovery is necessary to determine certain aspects of their claim. Although discovery may indeed be helpful in evaluating the ultimate question of liability, in federal court, a pleading must still be sufficient, on its face, to survive a motion to dismiss. *See Twombly*, 550 U.S. at 570. Accordingly, to the extent that Plaintiffs argue that the potential aid of further discovery could ever be a reason to deny a motion to dismiss in federal court, the Court is unpersuaded.

[21] The Court makes no finding as to Defendant ICDC's status as it may ultimately be determined upon discovery or a Motion for Summary Judgment.

categorically, may not be sued under Georgia law. *Brannon v. Thomas Cnty. Jail*, 280 F. App'x 930, 933 (11th Cir. 2008) (unpublished decision citing *Georgia Insurers*, in a footnote, without analysis, for the proposition that a detention center cannot be sued, when *Georgia Insurers* deals only with the capacity of an insurance company to sue or be sued); *Hickling v. Irwin Cnty. Det. Ctr.*, No. 7:10-CV-103 (HL), 2010 WL 3927798, at *2 (M.D. Ga. Sept. 29, 2010) (finding that ICDC was not an entity capable of being sued under Section 1983 when dismissing a *pro se* complaint, but without addressing the possibility that ICDC might be a private entity capable of suit in that capacity); *Brown v. United States*, No. CV 188-139, 2019 WL 415330, at *3 (S.D. Ga. Feb. 1, 2019) (finding, in a report and recommendation, that ICDC did not have the capacity to be sued in the Section 1983 context, relying on persuasive authority which questionably supports that proposition), *report and recommendation adopted*, No. CV 118-139, 2019 WL 938885 (S.D. Ga. Feb. 26, 2019); *Goodman v. The Robert A. Deyton Det. Facility*, No. 1:15-cv-1724-TWT, 2015 WL 5480046, at *3 (N.D. Ga. Sept. 15, 2015) (relying on the footnote in *Brannon* to find that a detention facility in Georgia may not be sued, which, as noted, the Court does not find persuasive).

The Court, therefore, will not follow the lead of the cases Defendant cites and, as a result, does not accept the proposition that detention centers, categorically, cannot be subject to suit. Particularly because Defendant can point to no Georgia case which directly supports that proposition, and it is doubtful that a private detention facility would be entitled to the same immunities as protects a Georgia state detention center run by a Georgia municipal corporation. Accordingly, Defendant ICDC's Motion to Dismiss the claims against it because it is a private entity without the capacity to sue or be sued is **DENIED-WITHOUT-PREJUDICE**.

### C.    Class Action Allegations

Defendant ICDC joins Defendant LaSalle's Motion to Dismiss Plaintiffs' class action allegations against it. (Doc. 227-1 at 3 n.9). For the reasons previously discussed with respect to Defendant LaSalle, *supra* Section II.B., the Court declines to address the adequacy of Plaintiffs' class definitions before discovery has begun. Accordingly, since it is not clear from the face of the SAC that no class action can be assembled under Rule 23, Defendant ICDC's

Motion to Dismiss Plaintiffs' class action allegations is **DENIED-WITHOUT-PREJUDICE**.

### D. Section 1983 Claims

Defendant ICDC joins Defendant LaSalle's Motion to Dismiss Plaintiffs' claims against it under 42 U.S.C. § 1983, at Counts 2 and 5 of the SAC. (Doc. 227-1 at 3 n.9). For the reasons previously discussed with respect to Defendant LaSalle, *supra* Section II.C., Defendant ICDC, as a private entity holding federal immigration detainees on behalf of the federal government, is not a state actor within the meaning of Section 1983 because Plaintiffs have failed to sufficiently allege that Defendant ICDC was a state actor under the relevant tests, and, therefore, Plaintiffs have failed to state a claim against Defendant ICDC under Section 1983. Accordingly, Defendant ICDC's Motion to Dismiss Plaintiffs' Section 1983 Claims against it, at Counts 2 and 5 of the SAC, is **GRANTED** and those claims are **DISMISSED-WITH-PREJUDICE**.

### E. Constitutional Claims

Defendant ICDC joins Defendant LaSalle's Motion to Dismiss Plaintiffs' constitutional claims (Counts 3 and 6), as moot. (Doc. 227-1 at 3 n.9). For the reasons previously discussed with respect to Defendant LaSalle, *supra* Section II.D., and because the Court finds that there is no reasonable expectation that the challenged conduct will repeat, particularly because the contract between Irwin County and ICE terminated in 2021, thereby severing the relationship between ICDC and the federal government which gave rise to the claims alleged. (Doc. 210 ¶ 33), Defendant ICDC's Motion to Dismiss Plaintiffs' constitutional claims against it, at Counts 3 and 6 of the SAC, is **GRANTED**. As a result, those claims are **DISMISSED-AS-MOOT**.

### F. Section 1985(2) Claim

Defendant ICDC joins Defendant LaSalle's Motion to Dismiss Plaintiffs' Section 1985(2) claim against it, at Count 9 of the SAC. (Doc. 227-1 at 3 n.9). For the reasons previously discussed with respect to Defendant LaSalle, *supra* Section II.E., Plaintiffs have failed to state a claim against Defendant ICDC under Section 1985(2) because the potential of a future federal lawsuit as alleged is an insufficient nexus to a proceeding in federal court to sustain Section 1985(2) liability. Accordingly, Defendant ICDC's Motion to Dismiss Plaintiffs'

Section 1985(2) claim against it is **GRANTED** and that claim is **DISMISSED-WITH-PREJUDICE**.

### G.    State Law Claims

Defendant ICDC joins Defendant LaSalle's Motion to Dismiss Plaintiffs' state law claims against it, at Counts 11–13, 15–17 & 23 of the SAC. The Court, however, has already granted Defendant ICDC's Motion to Dismiss Plaintiffs' federal claims and need not reach the merits of Plaintiffs' state law claims. For the reasons previously discussed with respect to Defendant LaSalle, *supra* Section II.F., and considering judicial economy, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant ICDC. Accordingly, Plaintiffs' state law claims against Defendant ICDC, at Counts 11–13, 15–17 & 23 of the SAC are **DISMISSED-WITHOUT-PREJUDICE**. Defendant ICDC's Motion to Dismiss Plaintiffs' state law claims against it is, therefore, **DENIED**, on the grounds asserted, as moot.

### H.    ICDC Officers in their Official Capacities

Defendant ICDC moves to dismiss the claims against the ICDC officers in their official capacities who remain in this action ("ICDC Official Capacity Officers").[22] (Doc. 227-1 at 5). An official capacity suit is "simply 'another way of pleading an action against an entity of which an officer is an agent.'" *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). As a result, because the Court has dismissed Plaintiffs' federal claims, against ICDC, at Counts 2, 3, 5, 6 and 9 of the SAC, dismissal of those claims against the ICDC Official Capacity Officers is warranted. Defendant ICDC's Motion to Dismiss Plaintiffs' federal claims against the ICDC Official Capacity Officers is **GRANTED**.

Moreover, because the Court has dismissed the federal claims against the ICDC Official Capacity Officers, and for the reasons previously discussed with respect to Defendant ICDC, *supra* Section III.F., the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against the ICDC Official Capacity Officers, and therefore, need not reach the merits of those state law claims. Accordingly, Defendant ICDC's Motion to Dismiss

---

[22] The ICDC officers in their official capacities that remain in the action are: David Paulk, Marteka George, Amber Hughes, FNU Smith, Latoshia Coney, FNU Hanes, Coretta Battle, Janet Vaughn, Cheryl Slacks, and Unknown ICDC Officers ##1-X.

Plaintiffs' state law claims against the ICDC Official Capacity Officers, is **DENIED** on the grounds asserted, as moot. As such, Plaintiffs' state law claims against the ICDC Official Capacity Officers, at Counts 11–13, 15–17 and 23, are **DISMISSED-WITHOUT-PREJUDICE**, because the Court declines to exercise supplemental jurisdiction over those claims.

### I.    Conclusion

For the reasons discussed above, in Section III, Defendant ICDC's Motion to Dismiss (Doc. 227) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. Plaintiffs' federal claims against Defendant ICDC and the ICDC Official Capacity Officers, at Counts 2, 3, 5, 6, and 9 of the SAC, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against these Defendants, at Counts 11–13, 15–17 & 23 of the SAC, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against Defendant ICDC or any ICDC Official Capacity Officers. As a result, Irwin County Detention Center, and the ICDC Official Capacity Officers: David Paulk, Marteka George, Amber Hughes, FNU Smith, Latoshia Coney, FNU Hanes, Coretta Battle, Janet Vaughn, Cheryl Slacks, and Unknown ICDC Officers ##1-X. in their official capacities are hereby **DISMISSED** as parties from the action.


### IV.    DEFENDANT WARDEN DAVID PAULK'S MOTION TO DISMISS

On January 24, 2023, Defendant Warden David Paulk ("Defendant Paulk") filed a Motion to Dismiss (Doc. 233) Plaintiffs' claims against him.[23] Defendant Paulk filed his Reply (Doc. 272) to Plaintiffs' Consolidated Response on March 22, 2023. All the Parties' respective briefs have been submitted and Defendant Paulk's Motion to Dismiss is ripe for ruling. Defendant Paulk moves the Court to dismiss Plaintiffs' claims against him. Specifically, Plaintiffs' class action allegations, Section 1983 claims (Counts 2 and 5), *Bivens* claims (Counts 3 and 6), Section 1985(2) claim (Count 9), and all state law claims asserted against him in

---

[23] Although it is unclear from Defendant Paulk's Motion whether he moves to dismiss in his individual or official capacity, the Court construes his Motion as moving in his individual capacity, since ICDC moved to dismiss Defendant Paulk in his official capacity in a separate motion. (*See* Doc. 227).

Counts 13, 16, 17 & 23 of the SAC. (Doc. 233 at 1–5). For the reasons discussed below in this Section IV, Defendant Paulk's Motion to Dismiss (Doc. 233) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**.

### A.    Standard of Review

For the sake of brevity, the Court incorporates by reference the standard of review set forth above. *See* discussion *supra* Section II.A.

### B.    Class Action Allegations

Joining in Defendant LaSalle's arguments, Defendant Paulk moves to dismiss Plaintiffs' class action allegations. (Doc. 233 at 1). For the reasons discussed with respect to Defendant LaSalle, *supra* Section II.B., the Court declines to address the adequacy of Plaintiffs' class definitions before discovery has begun. Accordingly, since it is not clear from the face of the SAC that no class action can be assembled under Rule 23, Defendant Paulk's Motion to Dismiss Plaintiffs' class action allegations is **DENIED-WITHOUT-PREJUDICE.**

### C.    Section 1983 Claims

Defendant Paulk moves to dismiss Plaintiffs' claims against him under 42 U.S.C. § 1983, at Counts 2 and 5 of the SAC, because he was not acting under color of state law. (Doc. 233 at 4–9). As the Court has previously discussed at length, *supra* Section II.C., Plaintiffs cannot state a claim against Defendant LaSalle because Plaintiffs make insufficient factual allegations that Defendant LaSalle was a state actor. Defendant Paulk was the warden at ICDC during the times relevant to Plaintiffs' alleged constitutional violations. (Doc. 210 ¶ 35). Although it is unclear from the SAC, it appears that Defendant Paulk was an employee of either LaSalle or ICDC, and there is no allegation or suggestion that he was employed by Irwin County. (*See Id.* ¶¶ 33–35). In any case, the SAC does not allege there was any greater state involvement with Defendant Paulk's conduct than there was alleged with LaSalle's or ICDC's.

As noted, Section 1983 liability is possible only where "the wrongdoer is clothed with the authority of state law." *Myers*, 713 F.3d at 1329. And a plaintiff can establish that a private party, like Defendant Paulk as an employee at a privately run detention center, acts with such authority only if they can satisfy the State compulsion test, the public function test, or the nexus/joint action test. *Rayburn*, 241 F.3d at 1347–48. Here, for the same reasons discussed with respect to Defendant LaSalle, Plaintiffs have not alleged facts which are sufficient to

establish that Defendant Paulk was a state actor under any of these tests, chiefly because he was holding civil immigration detainees on behalf of the federal government. (*See* Doc. 210 ¶¶ 35, 663–83, 710–29). As a result, the Court finds that Plaintiffs have failed to sufficiently plead that Defendant Paulk was acting under color of state law for purposes of Section 1983 liability.

Plaintiffs also appear to allege a *Monell* municipal liability claim against Defendant Paulk. (*See* Doc. 210 ¶ 676) and invoke the "causal connection" language of a supervisory liability claim—suggesting they wish to allege one. (Doc. 259 at 51–54); *see Cottone v. Jeanne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). However, as with the municipal liability claim against Defendants LaSalle and ICDC, a party must still be acting under color of state law to be liable under Section 1983. *See* 42 U.S.C. § 1983; *Harvey*, 949 F.2d. at 1129–33. Because Plaintiffs have not sufficiently pleaded that Defendant Paulk was acting under color of state law, he is not subject to either municipal or supervisory Section 1983 liability.

In sum, because Plaintiffs have failed to sufficiently plead that Defendant Paulk was a state actor, they have failed to state a claim under Section 1983, under any theory Plaintiffs rely upon. Accordingly, Defendant Paulk's Motion to Dismiss Plaintiffs' Section 1983 claims against him, at Counts 2 and 5 of the SAC, is **GRANTED** and those claims are **DISMISSED-WITH-PREJUDICE**.

### D.    *Bivens* Claims

Defendant Paulk moves to dismiss Plaintiffs' claims against him under *Bivens*,[24] at Counts 3 and 6 of the SAC. (Doc. 233-11 at 9–14). A claim under *Bivens*, allows a plaintiff whose federal constitutional rights have been violated by federal officers, acting under color of federal law, to bring a claim for damages against that officer. Unlike Section 1983, which is a congressionally authorized remedy for constitutional violations committed under color of state law, the authority to recognize *Bivens* actions against federal actors is anchored in the inherent power of federal courts to decide all cases "arising under the Constitution, laws, or treaties of the United States." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66–67 (2001) (quoting

---

[24] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

28 U.S.C. § 1331). As a result, *Bivens* is far more limited in scope than Section 1983, authorizing recovery only in certain types of cases. *See Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).[25]

To determine whether to recognize a claim under *Bivens*, courts engage in a two-step inquiry. First, a court asks "whether [the case] involves a claim that arises in a 'new context'" *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (quoting *Corr. Servs. Corp.*, 534 U.S. at 68); *see Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1206 (11th Cir. 2016). If so, a Court then asks whether there are any "special factors that counsel hesitation" about extending *Bivens* into the proposed new context." *Hernandez*, 140 S. Ct. at 743.[26]

### 1.    First Amendment Claim

Defendant Paulk contends that a *Bivens* damages remedy is unavailable in the First Amendment context. (Doc. 233-1 at 10–11). Plaintiffs concede that, in light of the Supreme Court decision in *Egbert v. Boule*, 596 U.S. 482, 494 (2022), a *Bivens* damages remedy is unavailable for their First Amendment claims. (Doc. 259 at 28 n.21) The Court agrees with Defendant Paulk and Plaintiffs; *Egbert* plainly forecloses Plaintiffs' First Amendment claim for damages under *Bivens*. *Egbert*, 596 U.S. at 498 ("We also conclude that there is no *Bivens* cause of action for [plaintiff's] First Amendment retaliation claim"). Accordingly, Defendant Paulk's Motion to Dismiss Plaintiffs' First Amendment *Bivens* claim against him, at Count 3 of the SAC, is **GRANTED** and that claim is **DISMISSED-WITH-PREJUDICE**.

### 2.    Fifth Amendment Due Process Claim

Defendant Paulk contends that the Court should decline to recognize Plaintiffs' Fifth Amendment Due Process claim under *Bivens*. (Doc. 233-1 at 11–12). Plaintiffs counter that the Court should recognize their Fifth Amendment Due Process claim because it does not present a new *Bivens* context, or if the Court finds that it does present a new context, that Plaintiffs should nonetheless be allowed to pursue a *Bivens* remedy for their claim. (Doc. 259 at 54–62).

---

[25] For the purposes of this analysis, the Court assumes, without necessarily finding, that Defendant Paulk and the other ICDC Defendants were acting under color of federal law, not state, when they committed the alleged constitutional violations.

[26] The Court notes that since *Ziglar*, the Eleventh Circuit has not examined *Bivens* authority in depth. As a result, the Court relies on Supreme Court authority for its analysis, as recent Supreme Court decisions have significantly changed the *Bivens* landscape.

### a.    New Context

The Court first inquires whether Plaintiffs' Fifth Amendment Due Process claim arises in a new *Bivens* context. A context is new if a case "is different in a meaningful way from previous *Bivens* [claims authorized by the Supreme Court.]" *Abassi*, 582 U.S. at 139. A case might differ in a meaningful way because of:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 139–40.

The Supreme Court has inferred a private cause of action against federal officers under *Bivens* in three contexts. First, in *Bivens* itself the Supreme Court recognized an implied private action for damages against federal officers who have violated a plaintiff's Fourth Amendment rights when acting in their official capacities. *Alvarez*, 818 F.3d at 1205–06 (citing *Bivens*, 403 U.S. at 388). Second, in *Davis v. Passman*, the Supreme Court recognized a Fifth Amendment implied damages remedy for a congressional staffer who was dismissed on the basis of sex. *Hernandez*, 140 S. Ct. at 741 (citing *Davis*, 442 U.S. at 228). And third, in *Carlson v. Green*, the Supreme Court recognized a damages remedy for a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment. *Hernandez*, 140 S. Ct. 735 at 741 (citing *Carlson*, 446 U.S. 14 (1980)).

Here, Plaintiffs allege that Defendants violated their Fifth Amendment Due Process rights by being deliberately indifferent to their serious medical needs and imposing punitive conditions of confinement on civil detainees. (Doc. 120 ¶ 742). Plaintiffs contend that this does not present a new *Bivens* context because the Supreme Court has already recognized a claim for deliberate indifference in *Carlson*, 446 U.S. at 14. Plaintiffs' argument goes something like this: because *Carlson* authorized an Eighth Amendment deliberate indifference claim, and some courts have suggested that a Fifth Amendment Deliberate Indifference claim employs the same standard as an Eighth Amendment Deliberate Indifference Claim, Plaintiffs' current claim is not meaningfully different from *Carlson*. (*See* Doc. 359 at 41–43).

Plaintiffs' reliance on *Carlson*, however, is misplaced. In *Carlson*, the Supreme Court authorized a *Bivens* claim against federal officials when those officials failed to give a federal prisoner competent medical care in violation of his Eighth Amendment right against the infliction of cruel and unusual punishment. *Carlson*, 446 U.S. at 16 n.1. The Supreme Court, however, has already rejected the argument that the Eighth Amendment prisoner mistreatment claim authorized in *Carlson* amounts to the same context as a Fifth Amendment mistreatment of an immigration detainee claim. *See Abbasi*, 582 U.S. at 146–49. In *Abbasi*, immigration detainees brought a Fifth Amendment due process claim for deliberate indifference while detained on suspicion of terrorism. *Id.* Those detainees argued that their claim arose in the same context as *Carlson* because both claims involved conditions of confinement. *Id.* at 146–49. The Supreme Court rejected this argument, holding that "even a modest extension [of a previous *Bivens* context] is still an extension," because the detainees' claim involved a different constitutional right, and the judicial guidance available to the warden at an immigration detention facility was less developed than a warden in the penal context. *Id.* at 148.

The Court, as a result, finds that Plaintiffs' Fifth Amendment Due Process claim against Defendant Paulk is meaningfully different than previous *Bivens* contexts. The Court finds, at least, two relevant distinctions. First, Plaintiffs claim a violation of the Fifth Amendment, where the plaintiff in *Carlson* alleged a violation of his Eighth Amendment rights. Second, Plaintiffs' claim against Defendant Paulk is against him in his role as the warden of a private detention facility, (Doc. 210 ¶ 35), unlike the defendants in *Carlson* who were officials at a federal corrections center. *See Carlson*, 446 U.S. at 16 n.1. Defendant Paulk was, therefore, operating under a significantly different statutory and legal mandate, and there was far less judicial guidance on his constitutional duties to detainees under his supervision. *See Abbasi*, 582 U.S. at 148. These distinctions, however modest, render Plaintiffs' claims meaningfully different than the *Bivens* claim authorized in *Carlson* as well as the contexts of *Bivens* and *Davis*. As a result, the Court finds that Plaintiffs' Fifth Amendment *Bivens* claim arises in a new context from previously recognized *Bivens* claims, and therefore, turns to the question of whether to extend *Bivens* to Plaintiffs' new context.

b.    **Extending *Bivens* to Plaintiffs' Claim**

Recognizing a new cause of action under *Bivens* is "a disfavored judicial activity." *Egbert*, 596 U.S. at 482 (citing *Abbasi*, 582 U.S. at 135). The Supreme Court has, therefore, refused to extend *Bivens* to any new context or new category for more than thirty years. *See Abbasi*, 582 U.S. at 135. As recent Supreme Court jurisprudence instructs, courts should be reluctant to extend *Bivens* because the power to create causes of action is "a legislative endeavor," and courts are ill-equipped to weigh the range of policy considerations that a legislature might rely on to create a new cause of action. *See Egbert*, 596 U.S. at 491; *Hernandez*, 140 S. Ct. at 742–43; *Abbasi*, 582 U.S. at 135–36.

Nevertheless, Plaintiffs ask the Court to extend *Bivens* to recognize a novel action for deliberate indifference to their serious medical needs and imposing punitive conditions of confinement, all in violation of their Fifth Amendment Due Process Rights. (*See* Doc. 210 ¶¶ 730–47). The Court, however, will extend *Bivens* into a new context only if there are no "special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 582 U.S. at 136–37. Although the Supreme Court has never defined the phrase "special factors counselling hesitation," that inquiry requires the Court to focus on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* "Even a single sound reason to defer to Congress, is enough to require a court to refrain from creating such a remedy." *Egbert*, 596 U.S. at 491 (citing *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 634 (2021)) (internal quotations removed). Two considerations counsel hesitation here.

First, the purpose of a *Bivens* remedy is to deter federal officials from committing constitutional violations, and that consideration is less acute when a private actor violates the Constitution. *Malesko*, 534 U.S. at 71 (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994)). The *Malesko* Court found cause for hesitation in similar circumstances. *Malesko* examined the issue of whether to extend a *Bivens* remedy for deliberate indifference to medical needs against a private prison corporation, acting pursuant to a contract with the Federal Bureau of Prisons. *Malesko*, 534 U.S. 66–74. In *Malesko*, the Supreme Court declined to extend *Bivens* liability to a private prison corporation because, among other factors, judgments against those corporations would have little deterrent effect on federal officials. *Id.* at 70. Defendant Paulk,

as an employee of a private detention facility operating under a contract with a state county to hold detainees for the federal government, is several steps further removed from federal officials than the defendant in *Malesko*, and, therefore, a *Bivens* remedy against him would be even less likely to have a deterrent effect on the conduct of federal officials contemplated by *Bivens* and its progeny. This diminished deterrent effect of a judgment against private detention center officials, therefore, counsels hesitation before extending *Bivens* to Plaintiffs' Fifth Amendment Claim.

Second, the availability of an alternative means of relief may alone counsel hesitation before extending a *Bivens* remedy. *Abbasi*, 582 U.S. 120, 137. This can be the case either if Congress has fashioned a remedy, *Bush v. Lucas*, 462 U.S. 367, 379 (1983), or state law provides relief for a plaintiff's injury. *Minneci v. Pollard*, 565 U.S. 118, 120–21 (2012). Defendant Paulk contends that the availability of alternative state law remedies is another factor counselling hesitation. (Doc. 233-1 at 13–14) The Court agrees. There are alternative state law remedies which Plaintiffs could use to pursue relief for the alleged unconstitutional conduct by Defendant Paulk, as evidenced by the many state law claims Plaintiffs assert against Defendant Paulk and the other ICDC Defendants. As a result, the Court finds that the availability of alternative means of relief counsels hesitation before extending a *Bivens* remedy to Plaintiffs' Fifth Amendment Claim.

Because the Court has identified two factors which counsel hesitation before extending Plaintiffs' proposed Fifth Amendment *Bivens* remedy to the deliberate indifference and punitive conditions of confinement context, the Court declines to authorize such an extension. Accordingly, Defendant Paulk's Motion to Dismiss Plaintiffs' Fifth Amendment *Bivens* Claim against him, at Count 6, is **GRANTED**. That claim, therefore, is **DISMISSED-WITH-PREJUDICE**.

### E.    Section 1985(2) Claim

Defendant Paulk moves to dismiss Plaintiffs' claim against him under 42 U.S.C. § 1985(2), at Count 9 of the SAC. (Doc. 233-1 at 14–17). Defendant Paulk' argument is identical to that made by Defendant LaSalle; *i.e.*, Plaintiffs' Section 1985(2) claim fails because the conduct Plaintiffs complain of does not involve a proceeding in federal court. Here, for the same reasons discussed with respect to Defendant LaSalle, *supra* Section II.E., Plaintiffs have

failed to state a claim against Defendant Paulk under Section 1985(2) because a potential future federal lawsuit is insufficient, by itself, to sustain a claim for deterrence, or retaliation under Section 1985(2). Accordingly, Defendant Paulk's Motion to Dismiss Plaintiffs' Section 1985(2) claim against him is **GRANTED** and that claim against him is **DISMISSED-WITH-PREJUDICE**.

### F.    State Law Claims

Defendant Paulk moves to dismiss Plaintiffs' state law claims against him at Counts 13, 16, 17 and 23. (Doc. 233-1 at 17–20). The Court, however, has granted Defendant Paulk's Motion to Dismiss Plaintiffs' federal claims against him and need not reach the merits of Plaintiffs' state law claims because it declines to exercise supplemental jurisdiction over those claims. For the reasons previously discussed with respect to Defendant LaSalle, *supra* Section II.F., and considering judicial economy, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant Paulk. Accordingly, Plaintiffs' state law claims against Defendant Paulk, at Counts 13, 16, 17 and 23, are **DISMISSED-WITHOUT-PREJUDICE**. Defendant Paulk's Motion to Dismiss Plaintiffs' state law claims is, therefore, **DENIED**, on the grounds asserted, as moot.

### G.    Conclusion

For the reasons discussed above, in this Section IV, Defendant Paulk's Motion to Dismiss (Doc. 233) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. All federal claims against him in his individual capacity at Counts 2, 3, 5, 6, and 9 of the SAC, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant Paulk in his individual capacity, at Counts 13, 16, 17 and 23 of the SAC, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against Defendant Paulk. As a result, David Paulk in his individual capacity is hereby **DISMISSED** as a party from the action.

## V.    IDENTIFIED INDIVIDUAL ICDC DEFENDANTS' MOTIONS TO DISMISS

On February 16, 2023, Defendant Marteka George ("Defendant George"), in her individual capacity, filed a Motion to Dismiss (Doc. 252). Plaintiffs filed their Response (Doc.

263) which also incorporated portions of Plaintiffs' Consolidated Response (Doc. 259), and Defendant George filed her Reply (Doc. 275) on March 24, 2023.

On November 20, 2023, Defendants Cheryl Slacks, Coretta Battle, Taura Amber Hughes, Latoshia Coney, and Janet Vaughn, in their individual capacities, filed a Motion to Dismiss (Doc. 349).[27] Plaintiffs filed their Response (Doc. 350) which also incorporated portions of Plaintiffs' Consolidated Response (Doc. 259), and these Defendants filed their Reply (Doc. 356) on January 8, 2024. Together with Defendant George, the Court will refer to Defendants Cheryl Slacks, Coretta Battle, Taura Amber Hughes, Latoshia Coney, and Janet Vaughn as the "Identified Individual ICDC Defendants." All the Parties' respective briefs have been submitted and the Identified Individual ICDC Defendants' Motions to Dismiss are ripe for ruling.

In their Motions, the Identified Individual ICDC Defendants move the Court to dismiss all of Plaintiffs' claims asserted in the SAC against them. Specifically, Plaintiffs' class action allegations, their Section 1983 claims (Counts 2 and 5), Plaintiffs' *Bivens* claims (Counts 3 and 6), Plaintiffs' Section 1985(2) claim (Count 9), and Plaintiffs' state law claims (Counts 13, 16, 17 & 23). For the reasons discussed below in this Section V, the Identified Individual ICDC Defendants' Motions to Dismiss (Doc. 252 & 349) are **GRANTED-IN-PART, DENIED-IN-PART,** and **DENIED-AS-MOOT-IN-PART**.

    **A.**    **Standard of Review**

For the sake of brevity, the Court incorporates by reference the standard of review set forth above. *See* discussion *supra* Section II.A.

    **B.**    **Class Action Allegations**

The Identified Individual ICDC Defendants move to dismiss Plaintiffs' class action allegations against them joining Defendant LaSalle's arguments. (Doc. 349-1 at 7–8). For the reasons previously discussed with respect to Defendant LaSalle, *supra* Section II.B., the Court declines to address the adequacy of Plaintiffs' class definitions before discovery has begun. Accordingly, the Identified Individual ICDC Defendants' Motions to Dismiss Plaintiffs' class action allegations are **DENIED-WITHOUT PREJUDICE.**

---

[27] Because FNU Hanes, FNU Smith, and Unknown ICDC Officers ##1-X remain unserved, they do not join the Identified Individual ICDC Defendants in their Motions to Dismiss.

### C.    Section 1983 Claims

The Identified Individual ICDC Defendants move to dismiss Plaintiffs' claims against them under 42 U.S.C. § 1983, at Counts 2 and 5 of the SAC, because they were not acting under color of state law. (Doc. 349-1 at 5–15) As the Court has previously discussed, *supra* Sections II.C., III.D., and IV.C., respectively, Plaintiffs cannot state a claim against Defendant LaSalle, Defendant ICDC, or Defendant Paulk because Plaintiffs do not adequately allege that those Defendants were state actors. As employees at ICDC working under Defendant Paulk, (*see* Doc. 210 ¶¶ 33–48) the Court finds that the Identified Individual ICDC Defendants, like Defendant Paulk as alleged, were not acting under color of state law as required for Section 1983 liability. Accordingly, Plaintiffs have failed to state a claim against the Identified Individual ICDC Defendants under Section 1983, and, as a result, the Identified Individual ICDC Defendants' Motions to Dismiss Plaintiffs' Section 1983 claims, at Counts 2 and 5 of the SAC, are **GRANTED**. Accordingly, those claims are **DISMISSED-WITH-PREJUDICE** as to those Defendants.

### D.    *Bivens* Claims

The Identified Individual ICDC Defendants join Defendant Paulk's motion to Dismiss the claims against them under *Bivens*, at Counts 3 and 6 of the SAC. (Doc. 348-1 at 15) As the Court has previously discussed with respect to Defendant Paulk, *supra* Section IV.D., it will not extend *Bivens* to recognize either a First Amendment claim; or a Fifth Amendment Due Process claim to the context of private employees acting under color of federal law when supervising immigration detainees. The factors counselling hesitation to extend *Bivens* liability to Defendant Paulk are equally applicable to the Identified Individual ICDC Defendants and, therefore, Plaintiffs have failed to state a claim against the Identified Individual ICDC Defendants under *Bivens*. Accordingly, the Identified Individual ICDC Defendants' Motions to Dismiss Plaintiffs' *Bivens* claims, against them, at Counts 3 and 6 of the SAC, are **GRANTED** and those claims against them are **DISMISSED-WITH PREJUDICE.**[28]

---

[28] The Identified Individual ICDC Defendants also argue that Plaintiffs fail to state a claim under Rule 8. However, the Court need not reach this argument.

### E.    Section 1985(2) Claim

The Identified Individual ICDC Defendants join Defendant Paulk's Motion to Dismiss Plaintiffs' claim against them under 42 U.S.C. § 1985(2). (Doc. 349-1 at 19). For the reasons discussed in depth with respect to Defendant LaSalle, Defendant ICDC and Defendant Paulk, *supra* Sections II.E., III.F., and IV.E., respectively, the Court finds that Plaintiffs have failed to state a claim against the Identified Individual ICDC Defendants under 42 U.S.C. § 1985. Accordingly, the Identified Individual ICDC Defendants' Motions to Dismiss Plaintiffs' Section 1985(2) claim against them at Count 9, are **GRANTED** and that claim against them is **DISMISSED-WITH PREJUDICE**.

### F.    State Law Claims

The Identified Individual ICDC Defendants move to Dismiss Plaintiffs' state law claims against them at Counts 13, 16, 17 and 23. (Doc. 349 at 19–21). The Court, however, has granted the Identified Individual ICDC Defendants' Motions to Dismiss Plaintiffs' federal claims against them, and need not reach the merits of Plaintiffs' state law claims, because it declines to exercise supplemental jurisdiction over those claims. For the reasons previously discussed with respect to Defendant LaSalle, *supra* Section II.F., and considering judicial economy, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against the Identified Individual ICDC Defendants. Accordingly, Plaintiffs' state law claims against the Identified Individual ICDC Defendants, at Counts 13, 16, 17 and 23, are **DISMISSED-WITHOUT PREJUDICE**. The Identified Individual ICDC Defendants' Motions to Dismiss Plaintiffs' state law claims are, therefore, **DENIED**, on the grounds asserted, as moot.

### G.    Defendant Marteka George's Motion to Dismiss

Defendant Marteka George in her individual capacity moves to dismiss the claims against her under Rules 12(b)(4) and 12(b)(5). The Court, however, has already granted her motion to dismiss on other grounds, and, therefore, need not reach the merits of her arguments for dismissal under Rules 12(b)(4) and 12(b)(5). Accordingly, Defendant George's Motion to Dismiss under Rules 12(b)(4) and 12(b)(5) is **DENIED-AS-MOOT**.

### H.    Conclusion

For the reasons discussed above, in this Section V, Defendants Cheryl Slacks, Coretta Battle, Taura Amber Hughes, Latoshia Coney, and Janet Vaughn's Motion to Dismiss (Doc. 349) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. All federal claims against Defendants Slacks, Battle, Hughes, Coney, and Vaughn in their individual capacities, at Counts 2, 3, 5, 6, and 9 of the SAC, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against these Defendants, at Counts 13, 16, 17 and 23 of the SAC, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against Cheryl Slacks, Coretta Battle, Taura Amber Hughes, Latoshia Coney, or Janet Vaughn, in their individual capacities and these Defendants are hereby **DISMISSED** as parties from the action.

Moreover, Defendant Marteka George's Motion to Dismiss (Doc. 252) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. All federal claims against Defendant George in her individual capacity, at Counts 2, 3, 5, 6, and 9 of the SAC, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant George in her individual capacity, at Counts 13, 16, 17 and 23 of the SAC, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against Defendant George in her individual capacity. As a result, Marteka George in her individual capacity is hereby **DISMISSED** as a party from the action.

Because all Identified Individual ICDC Defendants have been dismissed from this action, this leaves the unknown or unidentified FNU Smith, FNU Hanes, and Unknown ICDC Officers ##1-X. To date, Plaintiffs have not perfected service on these Defendants. Under Federal Rule of Civil Procedure 4(m), "if a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The original Habeus Petition was filed on November 9, 2020. Now, approaching three years after the action was filed, Plaintiffs have failed to perfect service on these unknown or unidentified Defendants. The Court put Plaintiffs on notice that unserved

Defendants may be subject to dismissal in an Order (Doc. 225) entered on January 3, 2023. Accordingly, Defendants FNU Smith, FNU Hanes, and Unknown ICDC Officers ##1-X, in their individual and official capacities, are **DISMISSED-WITHOUT-PREJUDICE**.

## VI.    CONCLUSION

For the reasons discussed above, the ICDC Defendants Motions (Docs. 232, 227, 233, 252 and 349) are **GRANTED-IN-PART, DENIED-IN-PART, and DENIED-AS-MOOT-IN-PART**. The dispositions of these Defendants' Motions are as follows:

1.    Defendant LaSalle Southeast, LLC's Motion to Dismiss (Doc. 232) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. Plaintiffs' federal claims against Defendant LaSalle at Counts 2, 3, 5, 6, and 9 of the SAC, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant LaSalle, at Counts 11–13, 15–17 & 23 of the SAC, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against Defendant LaSalle. As a result, LaSalle Southeast, LLC is hereby **DISMISSED** as a party from the action.

2.    Defendant Irwin County Detention Center's Motion to Dismiss (Doc. 227) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. Plaintiffs federal claims against Defendant ICDC and all ICDC Official Capacity Officers, at Counts 2, 3, 5, 6, and 9 of the SAC, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against these Defendants, at Counts 11–13, 15–17 & 23 of the SAC, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against Defendant ICDC or any of the ICDC Official Capacity Officers. As a result, Irwin County Detention Center and the ICDC Official Capacity Officers: David Paulk, Marteka George, Amber Hughes, FNU Smith, Latoshia Coney, FNU Hanes, Coretta Battle, Janet Vaughn, Cheryl Slacks, and Unknown ICDC Officers ##1-X,[29] in their official capacities, are hereby **DISMISSED** as parties from the action.

---

[29] Plaintiffs have not identified or served Unknown ICDC Officers ##1-X. However, as noted, a claim against those officers in their official capacities is another way of pleading a claim against ICDC itself. *See Busby*, 931

3.      Defendant Warden David Paulk's Motion to Dismiss (Doc. 233) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. All federal claims against him in his individual capacity at Counts 2, 3, 5, 6, and 9 of the SAC, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant Paulk in his individual capacity, at Counts 13, 16, 17 and 23 of the SAC, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against Defendant Paulk. As a result, David Paulk in his individual capacity is hereby **DISMISSED** as a party from the action.

4.      Defendants Cheryl Slacks, Coretta Battle, Taura Amber Hughes, Latoshia Coney, and Janet Vaughn's Motion to Dismiss (Doc. 349) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. All federal claims against Defendants Slacks, Battle, Hughes, Coney, and Vaughn, in their individual capacities, at Counts 2, 3, 5, 6, and 9 of the SAC, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against these Defendants, at Counts 13, 16, 17 and 23 of the SAC, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against Cheryl Slacks, Coretta Battle, Taura Amber Hughes, Latoshia Coney, or Janet Vaughn in their individual capacities, and, as a result, these Defendants are hereby **DISMISSED** as parties from the action.

5.      Defendant Marteka George's Motion to Dismiss (Doc. 252) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. All federal claims against Defendant George in her individual capacity, at Counts 2, 3, 5, 6, and 9 of the SAC, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant George in her individual capacity, at Counts 13, 16, 17 and 23 of the SAC, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action

---

F.2d at 776. The claims against those unknown officers, therefore, are legally indistinguishable from the claims against the other ICDC Official Capacity Officers. The Court, therefore, dismisses Unknown ICDC Officers ##1-X with prejudice, given that, regardless of whether Plaintiffs could perfect service on them, Plaintiffs have failed to state a claim against ICDC, or any of its officers in their official capacities.

against Defendant George in her individual capacity. As a result, Marteka George in her individual capacity is hereby **DISMISSED** as a party from the action.

6.      Lastly, Defendants FNU Smith, FNU Hanes, and Unknown ICDC Officers ##1-X, are **DISMISSED-WITHOUT-PREJUDICE**.

In sum, all ICDC Defendants have been dismissed from the action. The only Defendants who remain in the action, upon entry of this Order, are the Federal Defendants, and the Irwin County Hospital Defendants, whose motions to dismiss will be addressed in a separate order.

**SO ORDERED**, this 22nd day of March 2024.

/s/ **W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**